805 So.2d 264 (2001)
Edwin A. LUPBERGER
v.
Mary Jane LUPBERGER.
No. 2000-CA-2571.
Court of Appeal of Louisiana, Fourth Circuit.
December 5, 2001.
Rehearing Denied January 30, 2002.
*266 Robert C. Lowe, Terence L. Hauver, David M. Prados, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, LA, Attorneys for Plaintiff/Appellant.
Peter J. Butler, Peter J. Butler, Jr., Richard G. Passler, W. Christopher Beary, Breazeale, Sachse & Wilson, L.L.P., New Orleans, LA, Attorneys for Defendant/Appellee.
Court composed of Judge CHARLES R. JONES, Judge, JAMES F. McKAY, III, Judge and DAVID S. GORBATY.
McKAY, III, Judge.
The parties, Edwin A. Lupberger and Mary Jane Lupberger, married on January 6, 1989. Both parties were fifty-four years of age at the time of the marriage and Mr. Lupberger was the chairman and CEO of Entergy Corporation. On September 16, 1997, Mr. Lupberger filed for divorce. The parties were divorced on May 12, 1998.[1] During the marriage, which lasted nearly eight and a half years, the parties accumulated a considerable amount of community property.
The community property partition trial was held on September 30 and October 1, 1999, and February 16, February 17, and May 11, 2000. After the conclusion of trial, both parties submitted post-trial memorandums as well as proposed judgments and reasons for judgment. The trial court rendered its judgment along with reasons for judgment on September *267 11, 2000. It is from this judgment that Mr. Lupberger now appeals.
In this appeal Mr. Lupberger raises the following assignments of error: 1) the trial court erred legally in treating as community property Mr. Lupberger's separate property settlement agreement benefits received from Entergy after the community regime terminated, and in awarding Mrs. Lupberger interest thereon from the date he received same; 2) even if Mr. Lupberger's separate property settlement agreement benefits were community as distributions under the SERP (System Executive Retirement Plan), the trial court erred legally in the formula applied to establish Mrs. Lupberger's portion; 3) the trial court erred legally in disregarding the parties' stipulation as to how the two Colorado lots were to be valued, and in improperly adding the "value" of post-community separate improvements to the lots without giving Mr. Lupberger an offsetting credit of $630,000 for his separate expenditures; 4) the trial court erred legally in reducing Mr. Lupberger's reimbursement claim for mortgage notes paid because of his "use" of the home, when the trial court and this Court had denied previously Mrs. Lupberger's claim for rent under La. R.S. 9:374; 5) the trial court erred in awarding 1445 Second Street to Mrs. Lupberger; 6) the trial court erred in allocating the Colorado Condominium, 11 Hunter Hill, to Mrs. Lupberger; 7) the trial court erred in failing to include in the partition judgment a stipulation wherein Mrs. Lupberger was to file an insurance claim for "missing" property, and account to Mr. Lupberger for one-half of any proceeds; 8) the trial court erred in allocating the movables in storage, Item 1.B.1(c), to Mr. Lupberger when Mrs. Lupberger removed those items; 9) the trial court erred mathematically in calculating the partitioning of Item I.B.4(g); 10) the trial court erred in finding the mortgage on Second Street to be $308,084 (May 11, 2000 balance), while at the same time denying Mr. Lupberger reimbursement for payment of the mortgage note whereby the mortgage was reduced from $386,286 as of September 16, 1997; 11) the trial court erred mathematically in calculating its "net reimbursement" to be only $187,642.71; 12) the trial court erred in failing to address two reimbursement claims by Mr. Lupberger: Item III.D.1(a), taxes paid from his separate estate post-termination on the Colorado condominium, and Item III.E.22, expenses paid to Dupre, Inc., for repairs and maintenance to Second Street; 13) the trial court erred in denying Mr. Lupberger's reimbursement claim for property taxes paid post-termination on the Colorado lots, Item III.D.1(b), $11,864.01; 14) the trial court erred in denying Mr. Lupberger's reimbursement claim for separate monies expended post-termination for necessary maintenance and repairs to the Colorado lots and condominium; Items III.D. 2-9; 15) the trial court erred in denying Mr. Lupberger's reimbursement claim for separate monies expended post-termination for necessary maintenance and repairs to the Second Street residence, Items III, E. 2-21; 16) the trial court erred in denying Mr. Lupberger's reimbursement claim for separate monies expended post-termination for medical expenses of Mrs. Lupberger over and above the alimony pendente lite judgment (Item III.I.2), and payment of miscellaneous expenses for the sole benefit of Mrs. Lupberger (Item III. I.4); 17) the trial court erred in denying Mr. Lupberger's reimbursement claim for interest on the overpayment of alimony pendente lite, which payments were a direct result of Mrs. Lupberger's frivolous appeal of the divorce judgment; Item III. I.1, Interest; 18) the trial court erred in denying Mr. Lupberger's reimbursement claim for separate monies expended post-termination *268 for payment of community consumer debt; Item III.J; 19) the trial court erred in denying Mr. Lupberger's reimbursement claim for separate monies expended post-termination for payment of excess interest on the community FNBC loan, incurred and paid solely because Mrs. Lupberger, without just cause, refused to allow a community debt to be paid with available community funds, thereby delaying payment of the debt and incurring excess interest, all paid by Mr. Lupberger; Item III.M; 20) the trial court erred in awarding Mrs. Lupberger a reimbursement of $61,335 for the sale of 237 Hector Avenue, Item IV.A; 21) the trial court erred in awarding Mrs. Lupberger a reimbursement of $7,073.13 for alleged nonpayment of medical expenses. Item IV.B; and 22) the trial court erred in the "Recapitulation" because it included all the prior accumulated mathematical errors.

Assignments of Error Nos. 1 and 2
Mr. Lupberger argues that the trial court erred in determining that a portion of the benefits received under the SERP were community property and alternatively that if they were community property, the trial court erred in using the formula it applied to establish Mrs. Lupberger's portion. The crux of Mr. Lupberger's argument is that he received the benefits from the SERP due to a settlement of some claims he may have had against Entergy and not as a retirement benefit.
Mr. Lupberger was hired by Middle South Utilities, the predecessor to Entergy, on February 5, 1979. Mr. Lupberger married Mrs. Lupberger on January 6, 1989 and they entered into a community of acquets and gains. The community terminated on September 16, 1997. On August 1, 1998, Mr. Lupberger retired from Entergy. On September 9, 1998, Mr. Lupberger entered into a written agreement with Entergy whereby he elected to receive the SERP benefits as supplemented by the Supplemental Retirement Agreement (SRA) that he had entered into with Middle South Utilities.[2] During the period of Mr. Lupberger's employment with Entergy and its predecessor, a number of retirement plans had been in effect. These culminated with the SERP. Under the SERP, Mr. Lupberger was to receive certain benefits at retirement under certain circumstances. The SERP benefits are based on compensation and years worked at Entergy, including those during his marriage to Mrs. Lupberger. In order for Mr. Lupberger to receive such benefits, he would be required to waive, revoke, forgive or otherwise relinquish any and all rights to any benefits under all other plans. On September 18, 1998, Mr. Lupberger received a gross distribution from the SERP of $9,553,226 ($6,453,204.17 after withholding for taxes).[3]
A court of appeal may not set aside a trial court's finding of fact in absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989). The trial court's determination *269 that a portion of the SERP payment was community property was clearly a determination of fact. Furthermore, it is well settled that a trial court has broad discretion in adjudicating issues raised by divorce and partition of the community regime. See Kambur v. Kambur, 94-775 (La.App. 5 Cir. 3/1/95), 652 So.2d 99. Based on the record before this Court, we find no error in the trial court's determination that a portion of the SERP payment was community property.
The Louisiana Supreme Court has held that "a spouse's right to receive an annuity, lump-sum benefit, or other benefits payable by a retirement plan is, to the extent attributable to the spouse's employment during the community, an asset of the community." Sims v. Sims, 358 So.2d 919, 922 (La.1978). The SERP payment to Mr. Lupberger was calculated based upon his years of work at Entergy (including 15½ fictitious years) and his salary. Mr. Lupberger now argues that the trial court erred when it determined the community fraction of the SERP by dividing the years of the marriage (8.667) by the years worked at Entergy (19.333); Mr. Lupberger's position is that the trial court should have added the 15½ fictitious years of service to the years worked at Entergy when it calculated the community portion of the SERP.
In Hare v. Hodgins, 586 So.2d 118 (La. 1991), the Louisiana Supreme Court stated: "The percentage is based upon a fraction arrived at by dividing the length of time worked under the plan during the marriage by the total length of time worked toward earning the pension." That is precisely what the trial court did in the instant case. There are no reported Louisiana cases that directly address the issue of fictitious years of service. That being said, our jurisprudence has recognized that we "should be informed by the principles for dividing pension benefits that have evolved in other jurisdictions where the problems of valuating and dividing community or marital pension rights of [those] fora are sufficiently analogous to our own to make the reasoning of their courts and commentators considerable and useful." Blanchard v. Blanchard, 97-2305 (La.1/20/99), 731 So.2d 175; Hare, supra. The only reported decision from a community property jurisdiction to directly address the fictitious years issue comes from California. In In re Marriage of Lehman, 18 Cal.4th 169, 74 Cal.Rptr.2d 825, 955 P.2d 451 (1998), the California Supreme Court held that in partitioning the community interest in the pension plan, it should not add putative years credited to the employee spouse's service to the denominator of time rule fraction as those years were fictitious. The Court reasoned that fictitious years are merely a means, of several available, by which an employer effects the enhancement of compensation through pension benefits to the employee. We find the California approach to be both logical and prudent. Accordingly, we find no error in the trial court's determination of the fraction of the SERP benefit that should be community property.

Assignment of Error No. 3
During the course of the community property regime, Mr. and Mrs. Lupberger acquired two contiguously running lots in the Timberland Subdivision, Mt. Crested Butte, Colorado, which were designated as lots 12 and 13. On March 23, 1998, an injunction was entered which provided that "both parties, their agents and assigns are preliminarily restrained and enjoined from alienating or encumbering any of the community property that exists between them."[4] Before trial commenced, both *270 parties had obtained appraisals on the two separate lots; Mrs. Lupberger had obtained an appraisal for a total value of $440,000 while Mr. Lupberger obtained an appraisal for the total value of $300,000. During the partition trial it was discovered that Mr. Lupberger secretly had these lots redesignated as a single lot and had begun construction of a luxury residence.
Upon learning of Mr. Lupberger's actions, Mrs. Lupberger filed a motion for contempt, which documented her demand that Mr. Lupberger cease and desist construction and demolish and remove the improvements. In his testimony of May 11, 2000, Mr. Lupberger indicated that the construction work on the residence was almost 50% complete; the total cost of this construction would be approximately $1,400,000. Because Mr. Lupberger refused to demolish the improvements, the trial court was forced to value and apportion the property with the improvements. Based on both parties' pre-construction appraisals as well as the cost of construction and its level of completion, the trial court placed a total community value of $1,000,000 on the Mt. Crested Butte, Colorado property and apportioned the property to Mr. Lupberger. The trial court did not award Mr. Lupberger any reimbursement for his separate property expended to make the improvements on the Colorado property.
The termination of the community does not have the effect of freezing the value of each spouse's undivided interest in the community assets. Each spouse continues to be a co-owner of the assets until they are partitioned and, as such, is entitled to benefit from any appreciation in their value. Hare v. Hodgins, 586 So.2d 118 (La.1991). Furthermore, La. R.S. 9:2801(4)(a) provides that a court shall value community assets "as of the time of trial on the merits." Accordingly, we find no error in the trial court's valuation of the Mt. Crested Butte property.
We are now faced with the issue of whether the trial court erred in determining that Mr. Lupberger was not entitled to any reimbursement for his separate property used in improving the Mt. Crested Butte property. In reaching this determination, the trial court looked to articles in the Civil Code dealing with co-ownership, namely articles 804 and 497. Article 804 states:
Substantial alterations or substantial improvements to the thing held in indivision may be undertaken only with the consent of all the co-owners.
When a co-owner makes substantial alterations or substantial improvements consistent with the use of the property, though without the express or implied consent of his co-owners, the rights of the parties shall be determined by Article 496. When a co-owner makes substantial alterations or substantial improvements inconsistent with the use of the property or in spite of the objections of his co-owners, the rights of the parties shall be determined by Article 497.
Because Mrs. Lupberger was not aware of the actions taken by Mr. Lupberger and his efforts to keep those actions secret, the trial court applied Article 497, which provides:
When constructions, plantings, or works are made by a bad faith possessor, the owner of the immovable may keep them or he may demand their demolition and removal at the expense of the possessor, and, in addition, damages for the injury that that he may have sustained. If he does not demand demolition and removal, he is bound to pay at his option either the current value of the materials and of the workmanship of the separable improvements that *271 he has kept or the enhanced value of he immovable.
Mrs. Lupberger demanded that the improvements be removed; Mr. Lupberger refused to comply with this demand. The trial court decided that since Mr. Lupberger refused to remove the improvements as demanded by Mrs. Lupberger, Mrs Lupberger would be able to take advantage of the enhanced value of the immovable property but be under no obligation to reimburse Mr. Lupberger for his separate property used to make the improvements. In light of the clear language of the articles and Mr. Lupberger's covert actions, the trial court's decision appears equitable and consistent with the law. Furthermore, it is well settled that a trial court has broad discretion in adjudicating issues raised by divorce and partition of the community regime. The trial judge is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses. Kambur v. Kambur, 94-775 (La.App. 5 Cir. 3/1/95), 652 So.2d 99, 101-102. Accordingly, we find no error in the trial court's judgment on this issue.

Assignment of Error No. 4
Mr. Lupberger contends that the trial court erred in reducing his reimbursement claim for mortgage notes paid because of his "use" of the home, when the trial court and this Court had denied previously Mrs. Lupberger's claim for rent under La. R.S. 9:374. The trial court reasoned that Civil Code article 806 provides for the reduction of a reimbursement claim in proportion to the value of the occupying spouse's enjoyment of that property when that spouse occupies the residence to the exclusion of the non-occupying spouse. Given that Mr. Lupberger had occupied the former matrimonial home to the exclusion of Mrs. Lupberger since May of 1998, the trial court went on to find that Mrs. Lupberger was entitled to reduce Mr. Lupbeger's claims for payment of the necessary mortgage expense in full, considering the value of Mr. Lupberger's use and occupancy of the home.
In Roque v. Tate, 93-389 (La.App. 5 Cir. 2/9/94), 631 So.2d 1385, our colleagues in the Fifth Circuit addressed the applicability of article 806 to a situation similar to the one we are faced with in the instant case. In that case, the plaintiff argued that she should have been given an offset pursuant to article 806 for the value of the defendant's enjoyment of the property since he occupied it to her exclusion during the time in question. The Court held that the plaintiff's reliance on Article 806 was "misplaced." Id. at 1386. Under Article 806, a co-owner who has incurred necessary expenses or maintenance and management expenses is entitled to reimbursement from the other co-owners; except that if he who incurred these expenses had the enjoyment of the thing, the reimbursement is to be reduced in proportion to the value of his enjoyment. A mortgage is not such an expense, it is "a nonpossessory right created over property to secure the performance of an obligation." Id.; See also LSA-C.C. art. 2378. In both Roque and the instant case, the mortgage was not incurred by the party awarded use and occupancy of the home, it was an obligation which attached against the community at the moment of sale.
The controlling law in this situation is Civil Code article 2365, which provides in pertinent part:
If separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. The liability of a spouse who owes reimbursement is limited to the value of his share in the *272 community after deduction of all community obligations.
Therefore, the trial court erred in reducing Mr. Lupberger's reimbursement claim for mortgage notes paid on 1445 Second Street. Accordingly, Mr. Lupberger is entitled to reimbursement of one-half of the amount he has expended toward the mortgage payments.
Furthermore, Mrs. Lupberger is not entitled to rental payments as an offset to any reimbursement owed Mr. Lupberger. La. R.S. 9:374(C) provides:
A spouse who uses and occupies or is awarded the use and occupancy of the family residence pending either the termination of the marriage or the partition of the community property in accordance with the provisions of R.S. 9:374(A) or (B) shall not be liable to the other spouse for rental for the use and occupancy, unless otherwise agreed by the spouses or ordered by the court.
Pursuant to a March 23, 1998 judgment, the trial court awarded use of the former matrimonial domicile to Mr. Lupberger. Initially, Mrs. Lupberger did not request a rental value. When she later attempted to have a rental value assessed against Mr. Lupberger to offset mortgage payments under La. R.S. 9:374, the trial court rejected the claim and this Court affirmed its judgment.[5] Therefore, the issue of rent is res judicata.

Assignment of Error No. 5
Mr. Lupberger contends that the trial court erred in awarding 1445 Second Street to Mrs. Lupberger. Both parties desired to obtain allocation of this asset. Therefore, the trial court, based on "overall fairness" allocated the property in question to Mrs. Lupberger. In doing so, the trial court stated: "It would not be fair or equitable for this Court to allocate both the Mt. Crested Butte property and the 1445 Second Street property to Mr. Lupberger."
As stated earlier in this opinion, the trial judge is afforded a great deal of latitude in arriving at an equitable distribution of assets between the spouses. Kambur v. Kambur, 94-775 (La.App. 5 Cir. 3/1/95), 652 So.2d 99. Accordingly, we find no abuse of discretion in the trial court's awarding 1445 Second Street to Mrs. Lupberger.

Assignment of Error No. 6
Mr. Lupberger contends that the trial court erred in allocating the Colorado condominium located at 11 Hunter Hill to Mrs. Lupberger. It is Mr. Lupberger's position that the condominium is his separate property, purchased before the marriage, but for accounting purposes, it was stipulated to be worth $125,000 to the community. The parties agreed that the condominium was worth $125,000 to the community in order to avoid numerous reimbursement issues which would otherwise have to have been addressed. Because the parties stipulated that the condominium was worth $125,000 to the community, the trial court saw fit to allocate the condominium to Mrs. Lupberger when it divided the community property. Even though Mr. Lupberger owned the condominium before the marriage, because of the stipulated value of $125,000 to the community, it is difficult to find error in the trial court's allocation of this asset to Mrs. Lupberger. As stated previously, the trial judge is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses. Id. Accordingly, we find no error.

Assignment of Error No. 7
Mr. Lupberger contends that the trial court erred in failing to include in the *273 partition judgment a stipulation wherein Mrs. Lupberger was to file an insurance claim for "missing" property, and account to Mr. Lupberger for one-half of any proceeds. That, however, is not the case. In footnote three on page three of its reasons for judgment, the trial court states: "two items are missing for which Mrs. Lupberger may file an insurance claim, accounting to Mr. Lupberger for the proceeds." Accordingly, this assignment of error is without merit.

Assignment of Error 8
Mr. Lupberger contends that the trial court erred in allocating certain movables in storage, valued at $7,450, to him when Mrs. Lupberger removed these items from storage. Mrs. Lupberger maintains that she did not recover or take possession of these items. There is no evidence in the record before this Court that Mrs. Lupberger has possession of these items. Accordingly, we find no error in the trial court's allocation of these items to Mr. Lupberger.

Assignment of Error No. 9
Mr. Lupberger contends that the trial court erred mathematically in calculating a debt paid from the Hibernia investment account XXX-XXXXXX. A portion of the community's interest in this account was used to satisfy a community debt. The community funds have since been distributed with each party put in possession of their share of the same. Being that the debt was paid from community funds, it was paid equally by the parties. Hence, when the Hibernia investment account was liquidated, neither party was slighted or disadvantaged. Accordingly, this matter is moot.

Assignment of Error 10
Mr. Lupberger contends that the trial court erred in finding the mortgage on the Second Street property to be $308,084 (May 11, 2000 balance), while at the same time denying Mr. Lupberger reimbursement for payment of the mortgage note whereby the mortgage was reduced from $386,286 as of September 16, 1997. As discussed earlier in this opinion under Assignment of Error No. 4, Mr. Lupberger is entitled to reimbursement for payment of the mortgage note.
The issue we are now faced with is whether the trial court erred in using the balance on the mortgage from the last day of the partition trial rather than the balance on the mortgage at the time of the termination of the community. La. R.S. 9:2801(4)(a) states: "The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties." However, liabilities existing at the time of termination do not appreciate or depreciate and therefore are fixed at the time of termination. See Pitre v. Pitre, 501 So.2d 344, 347 (La.App. 3 Cir.1987). The amount of the mortgage on the Second Street property was fixed and ascertainable on the day the community terminated. The only reason it decreased was because Mr. Lupberger paid the mortgage notes with his separate property. Denying Mr. Lupberger's reimbursement claim in this situation makes no sense. Accordingly, we find that the trial court erred in denying Mr. Lupberger's reimbursement claim. Mr. Lupberger is entitled to reimbursement for onehalf of the amount he has paid on the mortgage since the termination of the community.

Assignment of Error No. 11
Mr. Lupberger contends that the trial court erred mathematically in calculating the net reimbursement claim due to Edwin Lupberger from Mary Jane Lupberger to be $317,964.88. Mr. Lupberger maintains that the correct "net reimbursement" due from Mrs. Lupberger to Mr. Lupberger is $337,605.17. Mrs. Lupberger concedes that this figure is correct. Accordingly, we find that the trial court erred in its *274 calculation of the "net reimbursement." The correct figure is $337,605.17

Assignment of Error No. 12
Mr. Lupberger contends that the trial court erred in failing to address two of his reimbursement claims: Item III.D.1 (a), taxes paid from his separate estate post-termination on the Colorado condominium, and Item III.E.22, expenses paid to Dupre, Inc. for repairs and maintenance on 1445 Second Street. These items were expressly denied by the trial court on page 19 of its reasons for judgment as improper reimbursement claims for luxury and maintenance expenses and/or as set off and reduced in full considering Mr. Lupberger's exclusive use and enjoyment of 1445 Second Street and the Colorado condominium.[6] Accordingly, this assignment of error is without merit.

Assignment of Error No. 13
Mr. Lupberger contends that the trial court erred in denying his reimbursement claim for taxes paid post-termination on the Colorado lots, Item II.D.1 (b), $11,864.01. The trial court rejected the claim based on Mr. Lupberger's "value of enjoyment." The trial court found that given Mr. Lupberger's use and occupancy of the Colorado lots by re-platting them into one and constructing his personal residence on those properties, as well as hiding of these actions, that he exercised "full control over these properties." Given the fact that Mr. Lupberger had exclusive use and possession of the property during the time in question, we find nothing clearly wrong nor manifestly erroneous in the trial court's denying his reimbursement claim for taxes.

Assignment of Error No. 14
Mr. Lupberger contends that the trial court erred in denying his reimbursement claim for separate monies expended post-termination for necessary maintenance and repairs to the Colorado lots and condominium. As stated earlier in this opinion, Louisiana law provides for a reduction of a reimbursement claim in proportion to the value of the occupying spouse's enjoyment of that property when one spouse occupies the property to the exclusion of the other spouse. See LSAC.C. art. 806. In the instant case, Mr. Lupberger exercised full control over the lots; he took secret action in having the lots redesignated as one lot and initiating construction thereon. Furthermore, through December of 1998, Mr. Lupberger maintained that the Colorado condominium was his separate property and Mrs. Lupberger did not have any access to this property. Considering these facts, the trial court denied and/or reduced in full Mr. Lupberger's claims for reimbursement of items relating to these properties because of his value of enjoyment. Based on the record before us, we find nothing clearly wrong nor manifestly erroneous in the trial court's denial of Mr. Lupberger's reimbursement claims relating to these properties.

Assignment of Error No. 15
Mr. Lupberger contends that the trial court erred in denying his reimbursement claim for separate monies expended post-termination for maintenance and repairs to the Second Street residence. The expenses for post-termination maintenance and repairs can be divided into two groups: 1) maintenance and repair expenses while Mrs. Lupberger occupied the home and 2) maintenance and repair expenses while Mr. Lupberger occupied the home.
With respect to those expenses incurred while Mrs. Lupberger occupied the property, the trial court ruled in 1998 as part of an award of alimony pendente lite that *275 Mr. Lupberger was to pay those expenses. Accordingly, those amounts are not reimbursable. See Gondrella v. Gondrella, 347 So.2d 938, 939 (La.App. 4 Cir.1977). Those expenses incurred by Mr. Lupberger after he moved back into the home were denied by the trial court as being luxury expenses or were reduced in full considering Mr. Lupberger's exclusive use and enjoyment of 1445 Second Street since April of 1998. In light of Civil Code article 806, this decision seems prudent. Accordingly, we find no error or abuse of discretion in the trial court's denial of Mr. Lupberger's reimbursement claims regarding 1445 Second Street.

Assignments of Error Nos. 16 and 18
Mr. Lupberger contends that the trial court erred in denying his reimbursement claim for separate monies expended post-termination for medical expenses of Mrs. Lupberger over and above the alimony pendente lite judgment and payment of miscellaneous expenses for the sole benefit of Mrs. Lupberger. Mr. Lupberger also contends that the trial court erred in denying his reimbursement claim for separate monies expended post-termination for payment of community consumer debt. The trial court specifically found that "given the circumstances under which the claim was presented, the lack of invoices or other reliable proof" that the items were not reimbursable. Based on the record before this Court, we cannot say that the trial court was clearly wrong or manifestly erroneous in its judgment regarding these issues.

Assignment of Error No. 17
Mr. Lupberger contends that the trial court erred in denying his reimbursement claim for interest on the overpayment of alimony pendente lite, which payments were a direct result of Mrs. Lupberger's appeal of the divorce judgment. Our Court's earlier opinion, which found Mrs. Lupberger's appeal of the divorce to be frivolous, stated:
Because we cannot determine from the record to what extent, if any, the appellant has been unjustly enriched and the appellee unjustly damaged by the appellant's continual receipt of alimony pendente lite during the course of the appeal, the matter is remanded to the district court for assessment and award in connection with the partition of the community of acquets and gains.[7]
The trial court failed to make this assessment. Accordingly, we will now make this determination. Being that Mrs. Lupberger was unjustly enriched by the payment of alimony pendente lite by Mr. Lupberger after the divorce, Mr. Lupberger is entitled to damages in the form of legal interest. See LSA-C.C. art. 2000. The formula for determining the measure of damages is set forth in Appendix A to this opinion.

Assignment of Error No. 19
Mr. Lupberger contends that the trial court erred in denying his reimbursement claim for separate monies expended post-termination for payment of excess interest on the FNBC loan, incurred and paid solely because Mrs. Lupberger, without just cause, refused to allow the community debt to be paid with available community funds, thereby necessitating Mr. Lupberger's payment.
On December 13, 1999, Mr. Lupberger filed a rule to show cause concerning payment of stipulated community debt with stipulated community funds. Mrs. Lupberger filed a formal opposition. The matter was heard on February 4, 2000, and judgment rendered on February 17, 2000, permitting payment of the community indebtedness from community funds. The Lupbergers stipulated at trial that interest *276 on the FNBC note payoff between the time Mr. Lupberger filed his rule and the morning of the hearing was $750. At the hearing on that rule, Mrs. Lupberger consented to the FNBC note payoff. Accordingly, interest on that amount is inappropriate.

Assignment of Error No. 20
Mr. Lupberger contends that the trial court erred in awarding Mrs. Lupberger a reimbursement of $61,335 for the sale of 237 Hector Avenue, when the evidence clearly shows that these monies were repaid by Mr. Lupberger in full.
237 Hector Avenue was Mrs. Lupberger's separate property, which was sold so that the community could place a down payment on 1445 Second Street. Mrs. Lupberger acknowledges that Mr. Lupberger provided her with Entergy stock valued at $88,656 in partial compensation. However, she maintains that she still had a reimbursement claim for $61,335. The trial court rejected Mr. Lupberger's argument because he:
[c]ould not establish that any of the payments with the exception of one were repayment of loan [and] Mr. Lupberger could not establish what loan this one was to repay and the testimony at trial demonstrated that Mrs. Lupberger advanced out of her separate property money for the benefit of the community on several occasions.
On this issue, the trial court weighed the evidence before it and made a credibility call. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Dept. of Transportation and Development, 617 So.2d 880, 883 (La.1993). Accordingly, we find no error on this issue.

Assignment of Error No. 21
Mr. Lupberger contends that the trial court erred in awarding Mrs. Lupberger a reimbursement of $7,073.13 for his alleged non-payment of medical expenses when the evidence clearly showed that of the amounts claimed, only $342.50 were legitimate and had not been paid. After a careful review of the record, we find no evidence to support Mr. Lupberger's contention. Accordingly, we find no error on the part of the trial court.

Assignment of Error No. 22
Mr. Lupberger contends that the trial court erred in the "Recapitulation" since it included all the prior, accumulated mathematical errors. Mr. Lupberger is partially correct. He is entitled to the following additional reimbursements: 1) one-half of the amount he has paid toward the mortgage on 1445 Second Street since September 16, 1997; 2) $19,640.29 for the mathematical error discussed in assignment of error No. 11; and 3) interest on the overpayment of alimony pendente lite (see Appendix A).

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed with the exception of those issues discussed in assignments of error Nos. 4, 10, 11, 17, and 22. As to those issues, we reverse and render as stated above.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.

 APPENDIX A
I. Overpaid II. Rate
 Alimony Of Legal III. Per IV. Due
Pendente Lite Interest Diem From
 $ 3,710 7.6 % $0.77 3/31/98
 $10,000 7.5 % $2.08 4/27/98
 $11,800 7.6 % $2.46 5/27/98
 $11,800 7.6 % $2.46 6/27/98
 $11,800 7.6 % $2.46 7/27/98
 $11,800 7.6 % $2.46 8/30/98
 $ 8,600 7.6 % $1.79 9/27/98
 $11,800 7.6 % $2.46 11/1/98
 $11,800 7.6 % $2.46 11/13/98
 $11,800 7.6 % $2.46 12/26/98
 $11,800 6.73% $2.18 1/28/99
 $11,800 6.73% $2.18 2/22/99
 $11,800 6.73% $2.18 3/30/99

*277 The amount of interest due Mr. Lupberger is to be calculated by multiplying the amounts in column III by the number of days from the date in column IV to the date of this Court's judgment and adding the amounts together.
NOTES
[1] On May 13, 1998, Mrs. Lupberger appealed the trial court's judgment of divorce. On April 21, 1999, our Court affirmed the trial court's judgment granting of the divorce. Lupberger v. Lupberger, 98-CA-1970 (La.App. 4 Cir. 4/21/99), 739 So.2d 1026.
[2] The SRA plan provides that in exchange for Mr. Lupberger's future service as the chairman and president of Middle South Utilities, that when computing retirement benefits under the non-qualified retirement plans that Mr. Lupberger will be deemed to have begun employment at Middle South Utilities on August 1, 1963 as opposed to the actual date of his hire. The agreement had the effect of adding 15½ years of fictitious service.
[3] This figure was based on the amount of compensation that Mr. Lupberger over the years as well as his years of service (both actual and fictitious).
[4] The injunction was entered by Judge Nadine Ramsey.
[5] 738 So.2d 138.
[6] The trial court's Reasons for Judgment does contain an error on page 19 in section 3 line 5 where it should read "III.E.21-11" instead of "III.E.20-21".
[7] 98-CA-1970, (La.App. 4 Cir. 4/21/99), 739 So.2d 1026.