| .DOWNING, J.
The sole issue in this appeal concerns whether the community property pension benefits apportionment formula under Sims v. Sims[1] (the Sims formula) should apply to pension benefits that increased substantially in value through increased union contributions to the pension plan made after the community terminated. The trial court ruled that the Sims formula was the appropriate framework for determining the respective spouses’ portions of Wallace Roland Goetzman, Sr.’s monthly pension benefits that were increased under one plan from $50.00 per service year at the time the community was terminated to $74.00 per service year at the time of the Goetzmans’ partition trial. For reasons that follow, we affirm the trial court’s judgment.

FACTS AND PROCEDURAL HISTORY

Wallace Roland Goetzman, Sr. and Carolyn Asbury Goetzman married on January 30, 1971. By judgment of separation of property signed April 27, 1998, the community of acquets and gains previously existing between the parties was terminated retroactive to the date of filing, May 2, 1996. The Goetzmans obtained a judgment of divorce on March 31,1999.
The Goetzmans partitioned most of their community property by agreement. The only items of community property still at issue are three union pension plans in Mr. Goetzman’s name. These partition matters came on for hearing on October 27, 2000. The trial court took the matters under advisement and issued written reasons on December 6, 2000. The judgment and three qualified domestic relations orders were signed on February 28, 2001. Therein, the trial court concluded that Ms. Goetzman was entitled to receive a portion of Mr. Goetzman’s retirement in accordance with the ^formula set forth in Sims. After the trial court denied Mr. Goetz-man’s motion for new trial, he appealed contending in one assignment of error that the trial court erred in applying the Sims formula to the three pension plans.

DISCUSSION

Mr. Goetzman is an electrician and a member of the International Brotherhood of Electrical Workers labor union, which controls and operates his pension plans. Through collective bargaining, the union has incrementally increased its members’ retirement benefits three times between the date of termination of the community and the date of trial in at least one of the plans. Accordingly, at the time of the trial for partition, pension benefits had increased in that plan from $50.00 per year of service (at the date of the termination of the community of acquets and gains) to $74.00 per year of service. For example, if a union member retired in 1996 after 20 years of service, he would receive a pension benefit of $1,000.00 per month (20 years x $50.00/service year = $1,000.00/ month). If he retired in 2000 after 20 years of service, his pension benefit would be $1,480.00/month (20 years x $74.00/ser-viee year = $1,480.00/month).
Mr. Goetzman argues that since the increased pension values occurred after the termination of the community, Mrs. Goetzman should not be entitled to share in the increased value.[2] Particularly, he *734 argues that since the union increased the pension value and the increase does not result from any growth in the fund value nor from the effort, skill, or industry of either spouse, the increase in value was not attributable to the community. He argues that Mrs. Goetzman should only receive the value of her share of the Upension benefits employing the $50.00/service year amount applicable when the community terminated. In so arguing, Mr. Goetzman suggests that the Louisiana Supreme Court did not contemplate this circumstance when it issued its opinion in Sims. He asserts that this court should apply by analogy the supreme court’s holding in Hare v. Hodgins, 586 So.2d 118 (La.1991), to adjust the Sims formula “to more accurately reflect the community and separate components of the pension benefit.”
The Hare court recognized that in some cases the Sims formula may not always accurately reflect the relative community and separate components of a particular pension plan, such as when there have been post-divorce increases to the pensions benefits not resulting “from a foundation provided by prior community earnings.” Hare, 586 So.2d at 127-128. In these cases, partitioning court should inquire “whether a substantial post-community increase is due to personal effort or achievement after the termination of the community that has little or no relationship with the prior community.” Hare, 586 So.2d at 128. The court then listed the considerations to be weighed in making the determination whether the increments were due purely to personal merit. These include: 1) whether the increment represents a fairly substantial increase in the employee’s post-community earnings; 2) whether the increment is due to a non-personal factor, such as cost-of-living raises; and 3) whether the increment is attributable to the employee’s meritorious individual efforts or achievements. Id.
The Hare court also observed, however, that when such an increase “results from nonpersonal elements such as longevity raises, cost-of-living raises, forfeitures by terminated employees, and investment returns, the community should participate in that gain.” Id. “Drawing the line in this |Bmanner,” the court observed, “is consistent with the codal scheme for classification of property as community or separate, is fair, and is consistent with the reasonable expectations of the parties.” Id.
Here, Mr. Goetzman concedes that the pension plan increases were not attributable to his personal industry after divorce. And in its written reasons, the trial court found that the pensions increased in value only because he continued to work and because the union increased the benefit level. Mr. Goetzman concedes also that Hare is not directly on point and does not directly control our review. He argues, however, that the union pension plan is different from other pension plans in that credit is accrued by hours worked rather than actual salary,[3] i.e., that a newly hired electrician would earn the same retirement credit per hour as an electrician, such as he, with 35 years service. Given these differences, he asserts that Mrs. Goetzman should not benefit from post-community increase in pension benefits, even though *735 the increase was not attributable to his effort, skill or industry.
We acknowledge that because of “great variations in pension plans and communal situations no one method can accomplish justice in every case.” Hare, 586 So.2d at 127. We also acknowledge there may be “unusual cases in which a substantial part of the increased retirement benefits earned by an employee spouse after divorce will not result from a foundation provided by prior community earnings.” Hare, 586 So.2d at 127-128. In these cases, courts should employ reasonable alternatives and adjustments to accomplish an appropriate distribution in an equitable manner. Hare, 586 So.2d at 127. But, as the Hare court directed, cases of | fidoubt are to be resolved in favor of the community and against the employee’s spouse’s separate estate or subsequent marital community. Hare, 586 So.2d at 128.
Here, however, the record reflects that increases in the pension plan’s annual service amount were in no way unusual or extraordinary. They were regular and expected. Between 1981 and the trial date, the service amount was increased at least twelve times.[4] We therefore conclude that such increases result from elements similar to longevity raises, cost-of-living raises, forfeitures by terminated employees, and investment returns in which gain the community should participate. See Hare, 586 So.2d at 128. See also Lupberger v. Lupberger, 00-2571, pp. 6-7 (La.App. 4 Cir. 12/05/01), 805 So.2d 264, 269, writ denied, 2002-0653 (La.5/24/02), 816 So.2d 308, where the court concluded that the addition of fifteen and one-half fictitious years of employer contributions should not be added to the denominator of the Sims formula to the detriment of the nonem-ployee spouse’s interest. The Lupberger court adopted reasoning from California jurisprudence[5] that the fictitious years were “merely a means, of several available, by which an employer effects the enhancement of compensation through pension benefits to the employee” and found no error where the trial court employed the Sims formula to calculate the proportionate share of the spouses. Lupberger, 00-2571 at pp. 6-7, 805 So.2d at 269. We find this reasoning also persuasive when applied to the facts of the matter before us.
The burden is on Mr. Goetzman to prove that his is such an unusual case that he is entitled to an increased apportionment under the Sims |7formula. Hare, 586 So.2d at 128. Mr. Goetzman has failed to make such a showing.
Accordingly, we conclude that Mr. Goetzman has failed to demonstrate an entitlement to an upward adjustment in his proportionate share of his pensions based on increases provided by his union. This assignment of error is without merit.

DECREE

For reasons stated, the judgment of the trial court is affirmed. Costs are taxed to Mr. Wallace Roland Goetzman, Sr.
AFFIRMED.

. 358 So.2d 919 (La.1978).

. We are mindful that "termination of the community does not have the effect of freezing the value of each spouse's undivided interest in the community assets,” Hare v. Hodgins, 586 So.2d 118, 121 (La.1991), and that, *734 "[e]ach spouse continues to be a co-owner of the assets until they are partitioned and, as such, is entitled to benefit from any appreciation in their value.” Id. The issue before us involves whether the increases at issue are properly attributable to the community.

. The record reflects that for every 1600 hours of pension credit, the member receives one year of creditable service under the pension plan.

. The pension fund administrator testified that benefits were increased once a year if actuarially reasonable.

. In re Marriage of Lehman, 18 Cal.4th 169, 74 Cal.Rptr.2d 825, 955 P.2d 451 (1998).