WINDHORST, J.
Appellant, Stacey Lockwood, appeals the trial court's April 3, 2017 judgment partitioning the community of acquets and gains. For the following reasons, we affirm.
Facts and Procedural History
Stacey Lockwood and Robert Lockwood were married on January 9, 1995. Two children were born of this marriage. The parties were divorced on June 26, 2013. By judgment dated June 23, 2013, the community property regime existing between Ms. Lockwood and Mr. Lockwood was terminated retroactive to May 24, 2012. On June 13, 2014, Ms. Lockwood filed a petition to partition the community property, and sworn descriptive lists were filed by both spouses.
The trial on the partition of community property was conducted on July 7, 2016. At the conclusion of the proceedings, the trial court took the matter under advisement. On April 3, 2017, the trial court issued a written judgment, which valued and granted ownership of certain assets and liabilities to each party, denied numerous reimbursement claims, determined contempt and sanction issues, and ordered Mr. Lockwood to make an equalizing payment to Ms. Lockwood. Ms. Lockwood appeals from various aspects of the judgment partitioning the community.
*402 Discussion
A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Snider v. La. Med. Mut. Ins. Co., 14-1964 (La. 05/05/15), 169 So.3d 319, 323, rehearing denied, 14-1964 (La. 06/30/15), 2015 La. LEXIS 1501 ; Hoffman v. Jefferson Parish Hosp. Services Dist. No. 2, 11-776 (La. App. 5 Cir. 04/10/12), 87 So.3d 370, 372, writ denied, 12-1295 (La. 09/28/12), 98 So.3d 842. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even if the appellate court may feel that its own evaluations and inferences are as reasonable. Snider, 169 So.3d at 323. Thus, the issue is not whether the trier of fact was right or wrong, but whether the trier of fact's conclusion was reasonable. Id. A court of appeal must not reweigh the evidence or substitute its own factual findings. Id.
La. R.S. 9:2801 provides for the procedure for the judicial partition of community property and settlement of claims after dissolution of the marriage. The allocation of assets and liabilities pursuant to La. R.S. 9:2801 A(4) is set forth as follows:
(4) The court shall then partition the community in accordance with the following rules:
(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
(b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.
(c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.
(d) In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.
A trial court has broad discretion in adjudicating issues raised by divorce and partition of the community regime. Goines v.Goines, 09-994 (La. App. 5 Cir. 03/09/11), 62 So.3d 193, 198, writ denied, 11-721 (La. 05/20/11), 63 So.3d 984. The trial court is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses. Id. Procedurally, a trial court partitioning community property is required to value the assets as of the time of trial on the merits. La. R.S. 9:2801 A(4)(a); Hare v. Hodgins, 586 So.2d 118, 121 (La. 1991). The termination of community property does not have the effect of freezing the *403 value of each spouse's undivided interest in the community assets. Lupberger v. Lupberger, 00-2571 (La. App. 4 Cir. 12/05/01), 805 So.2d 264, 270, writ denied, 02-653 (La. 05/24/02), 816 So.2d 308 (citing Hare, 586 So.2d at 121 ). Each spouse continues to be a co-owner of the assets until they are partitioned and, as such, is entitled to benefit from any appreciation in their value. Id. The trial court's allocation or assigning of assets and liabilities in the partition of community property is reviewed under the abuse of discretion standard. Legaux-Barrow v. Barrow, 08-530 (La. App. 5 Cir. 01/27/09), 8 So.3d 87, writ not considered, 09-447 (La. 04/13/09), 5 So.3d 152.
In her sole assignment of error, Ms. Lockwood contends that the trial court erred in not "utilizing the evidence presented in order to determine the proper partition of community property." Specifically, Ms. Lockwood argues that the trial court was manifestly erroneous in finding that: (1) her 401k plan was entirely community property; (2) she was not entitled to rental reimbursement for the months in which Mr. Lockwood resided in the community home; (3) she was not entitled to reimbursement for the loss of the value of the community home; (4) she should be granted exclusive right of use of the Honda Pilot and the 2009 Chevrolet Corvette; and (5) she should be responsible for the additional expenses related to the 2009 Chevrolet Corvette.
Ms. Lockwood's 401K plan
Ms. Lockwood contends that the trial court erred in finding that her 401K was entirely community property because her initial monetary contribution at the beginning of her 401K and the interest accumulated thereon is her separate property because it was acquired prior to her marriage to Mr. Lockwood. She argues that her initial investment of $14,110.09 is easily traceable as her separate property. Ms. Lockwood claims that an additional monetary value would also be discernable from the community property if a steady fixed interest rate of five percent (5%) over 18 years of marriage is applied. She therefore argues that her total separate property in her 401K plan would be $33,957.61.
In its written reasons, the trial court only allocated Mr. Lockwood "one-half of the community interest in the 401K Plan pursuant to a Qualified Domestic Relations Order, to be prepared by counsel for Stacey M. Lockwood in a form, and with such terms and conditions as are acceptable to the Administrator of the Plan."[1]
Upon review of the record, we find that the judgment regarding Ms. Lockwood's 401K plan is interlocutory and thus, pretermit any discussion on this issue. La. R.S. 9:2801 B provides:
Those provisions of a domestic relations order or other judgment which partitions retirement or other deferred work benefits between former spouses shall be considered interlocutory until the domestic relations order has been granted "qualified" status from the plan administrator and/or until the judgment has been approved by the appropriate federal or state authority as being in compliance with applicable laws. Amendments to this interlocutory judgment to conform to the provisions of the plan shall be made with the consent of the parties or following a contradictory hearing by the court which granted the interlocutory judgment. The court issuing the domestic relations order or judgment shall maintain continuing *404 jurisdiction over the subject matter and the parties until final resolution. (Emphasis added.)
The record does not establish that the Qualified Domestic Relations Order (QDRO) has been granted "qualified" status from the plan administrator or that the judgment has been approved by the appropriate federal or state authority as required. Therefore, the trial court's ruling ordering a QDRO for the 401K plan is not yet appealable. We therefore pretermit discussion of any issues concerning the parties' interest in the 401K plan.
Rental Reimbursement
Ms. Lockwood contends that the trial court erred in finding that she is not entitled to rental reimbursement for Mr. Lockwood's use and occupancy of the former community home located at 2011 Ormond Boulevard in Destrehan. She contends that the trial court: (1) evicted Mr. Lockwood from the community home; (2) ordered that Mr. Lockwood was responsible for the mortgage payments and various other payments for his use and occupancy; and (3) ordered that Ms. Lockwood was entitled to rental reimbursement in the event that Mr. Lockwood did not make the required payments on the community home. Ms. Lockwood argues that the trial court erred in finding that she was not entitled to rental reimbursement in accordance with La. R.S. 9:374 C.
When the community of acquets and gains is terminated, spouses become co-owners in indivision of the marital home. La. C.C. art. 2369.1 ; La. C.C. art. 801 ; La. C.C. art. 802 ; Philmon v. Philmon, 04-673 (La. App. 3 Cir. 11/10/04), 886 So.2d 1222, 1226. A co-owner in exclusive possession may be liable for rent, but only beginning on the date another co-owner has demanded occupancy and has been refused. Kendrick v. Kendrick, 13-1278 (La. App. 3 Cir. 04/02/14), 136 So.3d 958, 961 ; VonDrake v. Rogers, 43,546 (La. App. 2 Cir. 10/08/08), 996 So.2d 608, 610 ; Philmon, 886 So.2d at 1226 ; Sequeira v. Sequeira, 04-433 (La. App. 5 Cir. 11/30/04), 888 So.2d 1097, 1103 ; McCarroll v. McCarroll, 99-0046 (La. App. 1 Cir. 05/12/00), 767 So.2d 715, 722, writ denied, 00-2370 (La. 11/03/00), 773 So.2d 146 ; Lupberger v. Lupberger, 99-0144 (La. App. 4 Cir. 06/16/99), 738 So.2d 138, 140 ; McCarroll v. McCarroll, 96-2700 (La. 10/21/97), 701 So.2d 1280, 1290. Rental payments may not be assessed retroactively unless agreed to by the spouses or ordered by the court in the exercise of its sound and vast discretion. McCarroll, 701 So.2d at 1289.
La. R.S. 9:374 provides, in pertinent part:
A. When the family residence is the separate property of either spouse, after the filing of a petition for divorce or in conjunction therewith, the spouse who has physical custody or has been awarded temporary custody of the minor children of the marriage may petition for, and a court may award to that spouse, after a contradictory hearing, the use and occupancy of the family residence pending the partition of the community property or one hundred eighty days after termination of the marriage, whichever occurs first. In these cases, the court shall inquire into the relative economic status of the spouses, including both community and separate property, and the needs of the children, and shall award the use and occupancy of the family residence to the spouse in accordance with the best interest of the family. The court shall consider the granting of the occupancy of the family residence in awarding spousal support.
*405 B. When the family residence is community property or is owned by the spouses in indivision , or the spouses own community movables or immovables, after or in conjunction with the filing of a petition for divorce or for separation of property in accordance with Civil Code Article 2374, either spouse may petition for, and a court may award to one of the spouses, after a contradictory hearing, the use and occupancy of the family residence and use of community movables or immovables pending partition of the property or further order of the court, whichever occurs first . In these cases, the court shall inquire into the relative economic status of the spouses, including both community and separate property, and the needs of the children, if any, and shall award the use and occupancy of the family residence and the use of any community movables or immovables to the spouse in accordance with the best interest of the family. If applicable, the court shall consider the granting of the occupancy of the family residence and the use of community movables or immovables in awarding spousal support. (Emphasis added.)
C. A spouse who, in accordance with the provisions of Subsection A or B of this Section , uses and occupies or is awarded by the court the use and occupancy of the family residence, a community immovable occupied as a residence, or a community manufactured home as defined in R.S. 9:1149.2 and occupied as a residence, regardless of whether it has been immobilized, shall not be liable to the other spouse for rental for the use and occupancy, except as hereafter provided. If the court awards use and occupancy to a spouse, it shall at that time determine whether to award rental for the use and occupancy and, if so, the amount of the rent. The parties may agree to defer the rental issue for decision in the partition proceedings. If the parties agreed at the time of the award of use and occupancy to defer the rental issue, the court may make an award of rental retroactive to the date of the award of use and occupancy. (Emphasis added.)
It is undisputed that Ms. Lockwood willingly and voluntarily left the former family home with the two minor children. There is no showing in the record that she subsequently demanded and was refused occupancy of the family home so as to entitle her to rent. The record does not indicate that Ms. Lockwood was prevented for any reason from seeking to have a fair rental value set during the time Mr. Lockwood occupied the family home, or that the parties agreed to defer a determination thereof. Moreover, Ms. Lockwood did not appeal the January 7, 2013 consent judgment allegedly awarding Mr. Lockwood use and occupancy of the family home.[2]
We further find that La. R.S. 9:374 C, as argued by Ms. Lockwood, is inapplicable under the circumstances of this case. La. R.S. 9:374 C is applicable only if a spouse occupies the residence "in accordance with the provisions of Subsection A or B [.]"
*406 La. R.S. 9:374 A is not applicable in this case because the family home was not alleged to be the separate property of either spouse. La. R.S. 9:374 B deals with when the family home is community property or owned by the spouses in indivision, as is the situation here. However, subsection B only applies when either spouse petitioned for and the court awarded use and occupancy after a contradictory hearing. In the instant case, neither spouse petitioned for, nor did the court award use and occupancy, after a contradictory hearing. La. R.S. 9:374 C is only applicable where subsection A or B has been applied or where the trial court awards use and occupancy. In this case, the trial court did not award use and occupancy to Mr. Lockwood and neither party petitioned for use and occupancy as required by subsection B. We therefore find that the trial court did not abuse its discretion in denying Ms. Lockwood's claim for rental reimbursement.
Loss of value of family home
Ms. Lockwood contends that the trial court erred in finding that Mr. Lockwood was not responsible for the "deplorable condition" of the family home at the time of the sale in September 2013. She argues that when the family home was sold in September 2013, the condition of the home was "significantly less" than when she left it in February 2012. She further contends that the trial court was manifestly erroneous for excluding evidence that after they sold the family home in September 2013, the new owner subsequently resold the family home a few months later for an increased price of $140,000.
At trial, in support of her claim for loss of value of the family home, Ms. Lockwood's counsel attempted to submit into evidence a document purporting to show what the property was resold for by the new owner. Mr. Lockwood's counsel objected to the document based on relevance. After a discussion with counsel, the trial court found the document inadmissible. The trial transcript reveals that Ms. Lockwood's counsel did not object to the trial court's ruling, nor did counsel request to proffer the evidence.
Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the action more probable or less probable than it would be without the evidence. La. C. E. art. 401. Whether evidence is relevant is within the sound discretion of the trial court and an appellate court will not disturb that ruling in the absence of clear abuse of discretion. Tatum v. UPS, 10-1053 (La. App. 5 Cir. 11/15/11), 79 So.3d 1094, 1104, writ denied, 11-2783 (La. 02/17/12), 82 So.3d 290.
Evidentiary rulings are reviewable on appeal subject to the provisions of La. C.C.P. art. 1636, which permits a party to preserve evidence which was ruled inadmissible in the trial court.[3] Archangel v. Mayeaux, 12-696 (La. App. 5 Cir. 05/30/13), 119 So.3d 786. Error may not be predicated upon a ruling that excludes evidence unless a substantial right of a party is affected and the substance of the evidence was made known to the court by counsel. La. C.E. art. 103 A(2). In those instances, it is incumbent upon the party who contends his evidence was improperly excluded to make a proffer, and if he fails to do so, he cannot contend such exclusion was erroneous. Tatum, 79 So.3d at 1104-1105, citing *407 Goza v. Parish of West Baton Rouge, 08-0086 (La. App. 1 Cir. 05/05/09), 21 So.3d 320, writ denied, 09-2146 (La. 12/11/09), 23 So.3d 919, cert. denied, 560 U.S. 904, 130 S.Ct. 3277, 176 L.Ed.2d 1184 (2010).
The record shows that Ms. Lockwood did not object to the exclusion of evidence, and did not proffer the evidence she contends was erroneously excluded. In the absence of a contemporaneous objection and a proffer of the evidence, Ms. Lockwood cannot now complain that such exclusion was error. Therefore, we decline to review this assignment of error.
Honda Pilot
Ms. Lockwood contends that the trial court erred in concluding that the parties did not enter into a binding compromise that resulted in the transfer of ownership of the Honda Pilot from Ms. Lockwood to Mr. Lockwood. She argues that although she was originally granted exclusive use of the Honda Pilot, she entered into a compromise with Mr. Lockwood in open court wherein he agreed that he would pick up the vehicle although he was aware that it was no longer functional. Thus, she contends that the trial court erred in allocating the Honda Pilot to her.
At trial, Ms. Lockwood testified that when she originally left with the children, she took the Honda Pilot. The trial court subsequently granted her possession of the Honda Pilot, but as of the date of the trial, she did not know its location. She testified that the Honda Pilot was towed from her apartment complex because it was not running. Ms. Lockwood testified that although Mr. Lockwood agreed to take possession of the Honda Pilot, he never retrieved the car. The trial court found that no evidence was presented to show that there was a transfer in the ownership of the Honda Pilot, and Ms. Lockwood admitted that no transfer of the title for the Honda Pilot occurred.
On review of the record, we find the trial court did not abuse its discretion in finding that the parties did not enter into a compromise regarding the Honda Pilot and in allocating Ms. Lockwood ownership of the Honda Pilot.
Corvette and Corvette towing and storage fees
Ms. Lockwood contends that the trial court erred in allocating to her full ownership of the Corvette. She also argues that the trial court erred in making her financially responsible for the towing and storage fees for the Corvette.
In its written reasons for judgment awarding Ms. Lockwood full ownership of the Corvette and making her financially responsible for the towing and storage fees, the trial court made the following findings:
The undisputed evidence shows that Mr. Lockwood violated the court's order (awarding use and occupancy of the family home to Ms. Lockwood) by going to the family home without permission or authority. While a civil violation, Mr. Lockwood, somehow, was arrested for simple burglary of his own home and spent approximately five months in jail and four weeks at a state mental institution due to competency issues. Ms. Lockwood testified that while Mr. Lockwood was incarcerated, she was concerned that her credit would be ruined if the Corvette was repossessed. Therefore, she admits that she hired Jake's Towing to tow the vehicle from the family home, and that she transferred title to the Corvette without Mr. Lockwood's knowledge, permission or signature, even though the title was in both of their names. Ms. Lockwood's actions were in violation of the restraining orders against alienating or encumbering community property and were not in the community's best interest.
*408 * * *
Ms. Lockwood claims that the towing and storage fees incurred post-termination of the community are community property so that each party is responsible for half of this debt. $24,138.16 / 2 =$12,069.08 each. The court disagrees. La. Civil Code art. 2360 provides that if an obligation is incurred for the common interest of the spouses or for the interest of the other spouse, it is a community obligation. Article 2363 defines a separate obligation as an obligation resulting from an intentional wrong. The court finds that this obligation resulted from an intentional wrong and was not incurred to benefit the community or Mr. Lockwood. In addition, this debt was incurred post-termination of the community. Therefore, the court finds that the towing and storage charge are Ms. Lockwood's separate obligation.
We do not find that the trial court was manifestly erroneous in finding that Ms. Lockwood violated the trial court's restraining orders on encumbering and alienating community property. The record establishes that Ms. Lockwood alienated community property, the Corvette, when she sold "her one-half interest,"[4] transferred title to the Corvette to Jake's Towing, and encumbered the Corvette with a substantial towing and storage fee in violation of the trial court's restraining orders forbidding encumbering and alienating community property. Ms. Lockwood contends that she acted in good faith and in the best interest of the community to prevent the car from being repossessed and to save her and Mr. Lockwood's credit. However, the transcript reveals that Ms. Lockwood's actions were not for the benefit of the community as shown by her testimony as follows:
The main purpose for me was to get my name off of the car....That car was in my name. I just wanted my name off. Could never get my name off. I saw a way to get my name off and save my credit at the same time. Jake's paid the car off. And here we are.
Ms. Lockwood clearly did not act on behalf of the community when she sold "her one-half interest," transferred title to the Corvette to Jake's Towing, and encumbered the Corvette with a substantial towing and storage fee which encumbered and alienated community property. Accordingly, we conclude that the trial court did not abuse its discretion in allocating the ownership of the Corvette and the related towing and storage fees to Ms. Lockwood.
*409 Conclusion
For the above stated reasons, we affirm the trial court's April 3, 2017 judgment.
AFFIRMED

Ms. Lockwood's right to her initial investment and interest thereon as to her separate property in the 401K plan is not precluded by the language of the judgment.

The January 7, 2013 consent judgment does not award Mr. Lockwood use and occupancy of the community home. The consent judgment only states that Mr. Lockwood will be responsible for the monthly mortgage payment, insurance premium, and property tax for December 2012 and for every month which he continues to occupy the family home.

La. C.C.P. art. 1636 A provides: "When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence."

The bill of sale states that the vehicle is a 2009 Chevrolet Corvette, with the VIN number and title number. The bill of sale provides the following:
That in cosideration [sic] of $7374.30, the receipt of which is hereby acknowledged, I, the seller, do(es) hereby grant, sell, transfer, and deliver unto Jakes Auto Parts, heirs, executors, administrations, and assigns the following described vehicle. To have and to hold, all and singular, the said vehicle forever. Also the said seller hereby covenants with the said purchaser that (he) she; we is/are the lawful owner(s) of the said property by guaranting [sic] that it is free from all encumbrances. In the event of non-delivery of title at the time of purchase (we) the seller also holds Jakes Auto Parts and its employees harmless from towing, storing, .....[sic] or disposing of the said vehicle. I further assume the responsibility of any ...[sic] mortgage and any other encumbrances to deliver the title upon demand of Jakes Auto Parts in a reasonable amount of time if so required.
Handwritten at the bottom, the bill of sale further provides "Sold for pay off of 5812.86 to Chase Bank and tow and storage of 1561.44 on 10/18/2013 totaling 7374.30" and was signed by Ms. Lockwood as seller and Chuck Jacob, d/b/a Jakes. The bill of sale from Ms. Lockwood, as seller, to Jake's Towing, as buyer, does not state that Ms. Lockwood only sold her one-half interest in the Corvette.