457 So.2d 235 (1984)
Brenda COOK, Plaintiff-Appellee,
v.
Erskine COOK, Defendant-Appellant.
No. 83-861.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1984.
*236 Robert G. Nida of Gold, Little, Simon, Weems & Bruser, Alexandria, for defendant-appellant.
Downs & Downs, James C. Downs, Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, CUTRER and DOUCET, JJ.
CUTRER, Judge.
This appeal presents questions involving the status of certain assets acquired during the community of acquets and gains formerly existing between Brenda and Erskine Cook. Also, Brenda contends that the mortgage payments (including principal and interest) made during the existence of the community on the separate property owned by Erskine and which was utilized as the matrimonial home should be classified as a community debt.
Subsequent to dissolution of their marriage, Brenda sought to partition the community property and to set forth certain claims against Erskine under the guidelines of LSA-R.S. 9:2801. Each party filed a motion to traverse the detailed descriptive list of the community property provided by the other and a joint hearing on those motions was held wherein the trial court rendered judgment finding the following items to be community assets:[1]
(1) One portable equipment shed purchased during the existence of the community;
(2) The sum of $1,912.00 on deposit in a community checking account as of the date of the community's dissolution;
(3) A $750.00 debt due the community by Erskine for an oxidation pond constructed on Erskine's separate property during the community's existence; and
(4) A debt due the community by Erskine of $8,609.38, the total amount of the mortgage payments made by the community on the mortgage obligation attached to Erskine's separate property, which was used by the community as the matrimonial home.
The defendant, Erskine, appeals the judgment as to each of the aforementioned *237 items. Brenda has neither answered nor appealed. For the reasons to follow, we reverse in part, amend in part and affirm.

FACTS
The facts are derived by stipulation and from the testimony of Erskine who was the only witness to testify at the motions to traverse. A community property regime existed between the parties from September 26, 1975 (the date of their marriage) until October 22, 1980 (the date that a suit for separation was filed by Erskine). The parties were subsequently divorced in 1982, and this partition and accounting proceeding was instituted thereafter by Brenda.
The parties resided in Rapides Parish during the existence of the community and lived in a house purchased prior to the marriage and owned separately by Erskine. The house was financed by the Federal Land Bank in 1971, for a total of $17,000.00. The monthly payments averaged approximately $150.00, including principal and interest. A total of $8,609.38 in payments were made on the mortgage obligation during the existence of the community. The trial court found Erskine to be liable to the community for these payments. Of this amount $1,745.80 was payment on the principal and $6,863.58 (the balance) was interest expense.[2]
During the marriage, Erskine was employed by Missouri Pacific Railroad and his salary was the only source of income to the community. Apparently, Brenda's functions as the at-home-spouse included the care of three children who were the issue of a prior marriage by Erskine and who were also in his legal custody.
In 1979, the parties purchased a metal portable storage building for $754.00; the building was placed on Erskine's separate property. This building was recognized as community property by the trial judge.
In approximately July 1980, an oxidation pond, serving the matrimonial home, was built on Erskine's property at a cost of $750.00. Erskine testified that his property did not have access to a municipal sewerage system and he had, therefore, previously used a septic tank and field line. However, that system failed because of ground saturation which disrupted sewerage removal from the house. The oxidation pond was constructed to alleviate this problem. The trial judge found Erskine to be indebted to the community for the $750.00 construction cost.
On the date of the community's dissolution (October 22, 1980), a checking account solely in the name of Erskine and to which he deposited his semi-monthly pay checks, reflected a balance of $1,912.00. On the day before this, $1,000.00 was deposited into the account. According to Erskine, this amount was given personally to him by his father "to help with the kids." No other bank accounts were shown to exist. The trial judge recognized the balance of $1,912.00 as being community property.
We shall discuss each of the items separately.

PORTABLE BUILDING
The testimony of Erskine clearly reflects that the building in question was a metal portable building purchased in 1979 with community funds during the existence of the community. It was placed upon the property for use as a storage building.
Under both the pre-1980 law and the present law, this item is considered community property. See, LSA-C.C. art. 2402 (repealed)[3] and LSA-C.C. art. 2338.[4] The trial *238 court correctly deemed this asset as community.

CHECKING ACCOUNT
As to the status of the checking account, the trial court, in its reasons for judgment, properly disposed of this issue as follows:
"One such item concerns the amount on deposit in Mr. Cook's checking account at the time of the separation. On October 22, 1982, this account contained the sum of $1,912.00. Mr. Cook contends that of this amount $1,000 was a gift to him from his father and should not be a part of the community funds. It is presumed that any funds in a checking account during the existence of the community are community funds. The unsupported testimony of Mr. Cook is not sufficient to overcome this presumption. Therefore, the full amount on deposit as of October 22, 1982, must be considered community funds...."
Erskine failed to produce any independent or corroborating evidence that he was given a donation by his father. In view of this, we cannot say that the trial court was in error. Succession of Milton, 278 So.2d 159 (La.App. 1st Cir.1973).

OXIDATION POND
The trial court found that Erskine was indebted to the community for the $750.00 paid on the oxidation pond in July 1980, while the community still resided in Erskine's house. We find this to have been an improper award.
Article 2366 of the Civil Code, in effect at the time the oxidation pond was built, provides as follows:
"If community property has been used for the acquisition, use, improvement, or benefit of the separate property of a spouse, the other spouse is entitled upon termination of the community to one-half of the amount or value that the community property had at the time it was used."
Counsel for Brenda argues that this provision allows recovery of one-half of the $750.00 spent on the oxidation pond. We disagree, finding that this expenditure was a necessary one which the community required while residing in Erskine's house.
As taxes and insurance payments are expenses which the community should bear as it receives the benefits of residing on the separate property of one spouse, so are repairs made on a house that are necessary to maintain its livability. The only evidence as to the need for the oxidation pond comes from Erskine's testimony, which reflects that the area's ground had become too saturated for the use of a septic tank and field lines.
Had the Cooks chosen to merely replace the septic tank and lines with a new and similar system, we have no doubt that this would be a community debt. See, LSA-C.C. art. 2360[5] and LSA-C.C. art. 2363.[6] *239 We can see no basis for distinguishing that chosen means of repair from one wherein an oxidation pond, the necessary system, was installed.
Therefore, the expenses of constructing the oxidation pond was a necessary community expense, and the trial court erred in concluding that this was a community debt.

MORTGAGE PAYMENTS ON SEPARATE PROPERTY USED AS THE MATRIMONIAL HOME
The trial court held that Erskine was indebted to the community for the total ($8,609.38) of all the mortgage payments made during the existence of the community on the house and property separately owned by Erskine, but used during the parties' marriage as the sole matrimonial home. Although he did not state his reasons for this ruling, the trial judge apparently accepted Brenda's argument that LSA-C.C. art. 2364 allowed the recovery granted. That article, created by Act 709, § 1 of 1979, became effective on January 1, 1980, and reads as follows:
"If community property has been used to satisfy a separate obligation of a spouse, the other spouse is entitled to reimbursement upon termination of the community property regime for one-half of the amount or value that the property had at the time it was used."
The parties do not dispute the fact that the payments made on the mortgage obligation came from community funds/property. Erskine argues that art. 2364 cannot apply retrospectively to the payments made prior to January 1, 1980 (see C.C. art. 8), and that the law pre-existing Act 709, which only allowed the non-owning spouse to recover principal payments, should control as to mortgage payments made prior to January 1, 1980. In any event, Erskine argues, the new law should not allow Brenda to recover interest and principal payments, but if it does, he, in like manner, is entitled to rental payments from the community for the use of his separate property. This counter argument rests upon a reading of art. 2365, also created by Act 709, which states:
"If separate property of a spouse has been used to satisfy a community obligation, the spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used.
"Reimbursement may only be made to the extent of community assets, unless the community obligation was incurred for the ordinary and customary expenses of the marriage, or for the support, maintenance, and education of children of either spouse in keeping with the economic condition of the community. In the last case, the spouse is entitled to reimbursement from the other spouse even if there are no community assets."
This court has previously determined that the new Matrimonial Regimes Law, enacted by Act 709 of 1979, does not require a result different from the prior law regarding mortgage payments. The present law reflects substantial changes regarding spousal management of property, creditors' rights and property rights, but this court, in the very recent case of Willis v. Willis, 454 So.2d 429 (La.App. 3rd Cir.1984), was faced with facts similar to those in the case at hand and held as follows:

"The facts were stipulated. When the parties married in 1977, Osborne *240 owned separate property, a residence, burdened with two mortgage notes requiring combined payments of $231.91 a month, amounts which included both principal and interest. The couple made this residence their family home, and for four years the monthly installments on the mortgage notes were paid with community funds, totaling $11,131.68. When the community property regime terminated by separation in 1981, Geraldine claimed reimbursement of one-half of the community property used to make the monthly payments. The trial judge allowed reimbursement of one-half of only the principal amount of the payments made during the time period before January 1, 1980; for the period after that date, believing that there had been a change in the law, he allowed reimbursement of one-half the total payments of both principal and interest.

"We agree with the trial court's determination of the measure of reimbursement for the time period before January 1, 1980. Under former Civil Code art. 2408, when separate property increased in value, the other spouse was entitled to one-half the enhanced value. Thus, when separate property was used as a community home, and community funds were used to pay a mortgage note incurred as a separate obligation, on termination of the community the other spouse was entitled to reimbursement of one-half the principal, but not one-half the interest payments. Hurta v. Hurta, 260 So.2d 324 (La.App. 4th Cir.1972). The Fourth Circuit in Hurta equated the increase in value with the principal payments on the mortgage note. Further, it reasoned that, because the husband's separate property was used as the family home, the interest paid on the mortgage note was a community expense in producing a `profit' to the community under former article 2402:

`... By providing his separate house as the family home, the husband dedicates its actual "profits," although not reduced to a dollar-revenue, to the community, and that dedication produces an actual, in-pocket, dollar saving to the community in the form of the rent for another house which the community consequently does not have to expend.

`The husband's separate property unquestionably did produce "profits" to the community, and, in the Supreme Court's words in Ratcliff, supra, 24 So.2d at 460, "it is but just, equitable and proper that the ordinary expenditures required in the production of such profits and in the preservation of the property should be borne by the community." ...'
On the basis of the reasoning of the Hurta case, we think the trial judge in the present case was correct in limiting the reimbursement to one-half the amount of principal paid on the mortgage notes for the period before January 1, 1980.
"Neither the codal underpinnings nor the logic of Hurta were changed by the new Matrimonial Regimes Law (Act 709 of 1979), effective January 1, 1980, as applied to the present issue. It is true that present articles 2364 and 2366 changed the measure of reimbursement from one-half the enhanced value to one-half of the community property so used. These articles read:
`Art. 2364:
"If community property has been used to satisfy a separate obligation of a spouse, the other spouse is entitled to reimbursement upon termination of the community property regime for one-half of the amount or value that the property had at the time it was used."
`Art. 2366:
"If community property has been used for the acquisition, use, improvement, or benefit of the separate property of a spouse, the other spouse is entitled upon termination of the community to one-half of the amount or value that the community *241 property had at the time it was used."'

However, applying the reasoning of Hurta and looking at present laws in pari materia, we note that the fruits and revenues of Osborne's separate property (unless reserved by him, which was not done in this case) belonged to the community. Civil Code art. 2339. The use of Osborne's separate residence by the community was an enjoyment of the `natural and civil fruits' of the separate property. The cost of this benefit to the community included the payment of interest. Succession of Ratcliff 24 So.2d 456 (La.1945). The principal payment on Osborne's notes went to the satisfaction of a separate obligation under article 2364, as well as to the `acquisition ... or benefit of the separate property' under article 2366, and did not benefit the community at all. Therefore, the payment of the principal with community funds entitles the other spouse to reimbursement. On the other hand, the payment of interest benefitted the community, because this was a business cost of maintaining the natural and civil fruits of this separate property for the community's use. Therefore, the interest cost should not have been included in the amount to which the other spouse was entitled to reimbursement."

Under this reasoning the trial court in the case at hand erred in classifying the total mortgage payments as a debt due the community. According to Willis, only the principal paid on the mortgage payments can be regarded as a debt owed to the community by the separate estate of Erskine.
Accordingly, that portion of the trial court judgment recognizing the debt due the community to be $8,609.38 by Erskine Cook as a result of mortgage payments shall be reduced to $1,745.80.
For these reasons, that portion of the trial court judgment recognizing that the sum of $750.00 paid for the oxidation pond was a debt owed to the community is reversed and set aside. Also, that portion of the trial court judgment, recognizing that the sum of $8,609.38 paid as mortgage payments was a debt owed to the community, is amended by reducing this amount to the sum of $1,745.80. In all other respects the judgment of the trial court is affirmed. The costs of this appeal are assessed equally between the parties.
REVERSED IN PART; AMENDED IN PART AND AFFIRMED.
NOTES
[1] Other assets and claims were also dealt with by the trial court, but the parties have not contested their disposition.
[2] These figures are derived from data provided by the parties covering the period of October 1, 1975 to October 31, 1980. Although the community actually existed from September 26, 1975 until October 22, 1980, we do not find a four-day discrepancy deserving of more detailed calculations than those we have made herein.
[3] LSA-C.C. art. 2402 provides:

"This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. But damages resulting from personal injuries to the wife shall not form part of this community, but shall always be and remain the separate property of the wife and recoverable by herself alone; `provided where the injuries sustained by the wife result in her death, the right to recover damages shall be as now provided for by existing laws.'"
[4] LSA-C.C. art. 2338 provides:

"The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property."
[5] LSA-C.C. art. 2360 provides:

"An obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation."
[6] LSA-C.C. art. 2363 provides:

"A separate obligation of a spouse is one incurred by that spouse prior to the establishment or after termination of a community property regime, or one incurred during the existence of a community property regime though not for the common interest of the spouses or for the interest of the other spouse. An obligation resulting from an intentional wrong not perpetrated for the benefit of the community, or an obligation incurred for the separate property of a spouse to the extent that it does not benefit the community, the family, or the other spouse, is likewise a separate obligation."