JUDE G. GRAVOIS, Judge.
 

 [Jn this community property partition suit, both Nathaniel Goines (“Mr. Goines”) and Dianne Goines (“Mrs. Goines”) appeal certain portions of a judgment rendered by the trial court on April 21, 2009, as amended on May 29, 2009 and June 2, 2009. After thorough review of the record and the evidence, we affirm in part and reverse in part. Because the trial court failed to allocate the community home to either party and to complete the partition proceeding, we find that the partition has not been finalized, and accordingly, also remand for further proceedings.
 

 FACTS AND PROCEDURAL BACKGROUND
 

 Dianne Goines and Nathaniel Goines were married on June 20, 1986. Mr. Goines filed for divorce on August 7, 2000. The judgment of divorce was rendered on July 26, 2001. No children were born of the marriage.
 

 |sThe parties’ residence during the marriage, located at 2232 Country Club Drive in LaPlace, Louisiana, was purchased by Mr. Goines on August 31, 1985, prior to the parties’ marriage. Previous litigation in this case has determined that the house became community property when the parties executed an affidavit to that effect on March 30, 1988. See
 
 Goines v. Goines,
 
 08-12 (La.App. 5 Cir. 6/19/08), 989 So.2d 794, wherein this court reversed the trial court, which had found the house to be Mr. Goines’ separate property. That judgment was not appealed further. The house was refinanced in April of 1988, which is pertinent to this appeal.
 

 The community property partition suit was tried on August 28, 2008 and October 8, 2008. The trial court rendered a detailed judgment on April 21, 2009. Mr. Goines moved for a new trial, arguing about certain contradictory portions of the judgment. Mrs. Goines also moved for a new trial, arguing that other portions of the judgment were contradictory and/or in error. The trial court denied both parties’ Motions for New Trial, but issued two orders (one on May 29, 2009 and the other on June 2, 2009) that amended the April 21, 2009 judgment in order to make “internally consistent” rulings. The parties thereafter appealed the judgment, as amended.
 

 APPLICABLE LAW
 

 LSA-R.S. 9:2801(A)(4) directs the trial court to partition the community in accordance with the following rules:
 

 (a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
 

 (b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.
 

 |4(c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extin
 
 *198
 
 guish that liability. The allocation in no way affects the rights of creditors.
 

 (d) In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.
 

 (e) In the event that the allocation of an asset, in whole or in part, would be inequitable to a party, the court may order the parties to draw lots for the asset or may order the private sale of the asset on such terms and conditions as the court deems proper, including the minimum price, the terms of sale, the execution of realtor listing agreements, and the period of time during which the asset shall be offered for private sale.
 

 (f) Only in the event that an asset cannot be allocated to a party, assigned by the drawing of lots, or sold at private sale, shall the court order a partition thereof by licitation. The court may fix the minimum bids and other terms and conditions upon which the property is offered at public sale. In the event of a partition by licitation, the court shall expressly state the reasons why the asset cannot be allocated, assigned by the drawing of lots, or sold at private sale.
 

 It is well settled that a trial court has broad discretion in adjudicating issues ráised by divorce and partition of the community. The trial judge is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses. In deciding to whom an asset or liability shall be allocated, the court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances the court deems relevant. The trial court’s allocation or assigning of assets and liabilities in the partition of community property is reviewed under the abuse of discretion standard.
 
 Legaux-Barrow v. Barrow,
 
 08-530 (La.App. 5 Cir. 1/27/09), 8 So.3d 87.
 

 |
 
 -MR- GOINES’ ASSIGNMENTS OF ERROR
 

 No. 1. The trial court erred in denying reimbursement to Mr. Goines for Mrs. Goines’ failure to pay debts she represented she was paying, for encumbering the family home post termination of the community, and for her failure to pay indebtedness on the encumbrance.
 

 In his first assignment of error, Mr. Goines argues that he is entitled to damages from Mrs. Goines for her failure to preserve and prudently manage former community property under her control, in that, after the filing of the divorce petition, she encumbered the community residence unilaterally, granting a mortgage to River Parishes Financial Services, L.L.C. (“River Parishes”) without telling Mr. Goines, and then failed to make payments on such indebtedness, and other indebtednesses, after termination of the community, in violation of LSA-C.C. art. 2369.3
 
 [1]
 
 and art. 2369.4.
 
 [2]
 

 
 *199
 
 The matter of Mrs. Goines’ mortgage on the community home and the debts associated therewith was litigated in
 
 River Parishes Financial Services, L.L.C. v. Goines,
 
 No. 48,872, Parish of St. John the Baptist. A portion of that suit was appealed in
 
 River Parishes Financial Services, L.L.C. v. Goines,
 
 07-641 (La.App. 5 Cir. 2/6/08), 979 So.2d 518. This court’s opinion shows that the parties had reached a consent judgment that declared the mortgage and liens on the home null and void. However, that judgment was later vacated because other terms therein were not fulfilled. The record before us does not show if the parties thereafter confected another consent judgment in that suit or if the mortgage and/or liens | nwere ever resolved. Although the parties’ testimony in this proceeding suggested that some conclusion was reached in that suit, we have insufficient information about that suit before us and thus cannot base any ruling here on it. We do note that in this proceeding, a judgment rendered on March 27, 2007 determined that most of the loans Mrs. Goines made with River Parishes were found to be community obligations.
 

 The trial court denied Mr. Goines’ claims of mismanagement because it found that he did not raise this issue in a petition, as required by LSA-C.C.P. art. 856
 
 [3]
 
 and LSA-C.C. art. 2354,
 
 [4]
 
 but only in a post-trial brief. We find that Mr. Goines did in fact allege in his Motion for Judicial Partition of Community Property filed on November 12, 2002 that Mrs. Goines had mismanaged the community.
 
 [5]
 
 However, the allegations were not more specific than that, and thus failed to plead this issue with specificity or particularity as required by LSA-C.C.P. art. 856 and LSA-C.C. art. 2354. Accordingly, we find no manifest error in the trial court’s ruling on this issue, denying Mr. Goines’ claim herein.
 

 No. 2. The trial court erred in denying Mr. Goines’ claim for reimbursement for patio repairs, duct installation, and interest on a loan for roof repairs.
 

 Mr. Goines next argues that the trial court erred in denying his claims for reimbursement for patio repairs ($9,300), duct installation ($856.72), and interest on a loan for roof repairs ($210.95). Mr. Goines claimed in the trial court, as he does here, that he is entitled to reimbursement for these expenses under LSA-C.C. art. 2369.3, comment (f), which states that a spouse who incurs expenses in 17compliance with the obligation imposed by this article is entitled to reimbursement for one-half the costs in accordance with general principles of the law of co-ownership as per LSA-C.C. art. 806.
 
 [6]
 

 
 *200
 
 The trial court found that Mr. Goines failed to prove that the repairs to the patio were the kinds of ordinary maintenance and repairs envisioned by article 806 and that Mr. Goines failed to prove that such repairs increased the value of the property. In addressing this issue in its judgment, the trial court stated:
 

 ... Nathaniel Goines’ conflicting testimony doesn’t establish that the work done to the patio was necessary, or that it increased the value of the home. Nor was there any evidence presented that shows that repairing the patio or installing air conditioning enhanced the value of the property. The Fourth Circuit held in
 
 Lentz v. Lentz
 
 that the costs of improvements made after the termination of the community, including painting, kitchen cabinets, and adding a patio, were not reimbursable. 411 So.2d 59, 61-62 (La.App. 4 Cir.1981). That court concluded that there was insufficient evidence to establish the improvements enhanced the value of the property, and that the improvements were not made for the upkeep of the property, but rather for his own use and benefit.
 
 Id.
 
 at 62.
 

 The conflicting testimony and lack of evidence showing that the property value was enhanced by the work done on the patio require this Court to come to the same conclusion as the Fourth Circuit. There is no evidence or testimony showing that that the property value was enhanced by the work on the patio, and Nathaniel Goines’ testimony indicates that the air conditioning was for his own use and benefit. Therefore, his reimbursement claim for half of the $9,306 spent on the patio is denied.
 

 The trial court came to a similar conclusion regarding Mr. Goines’ claim concerning the duct installation. In brief, Mr. Goines does not advance any new arguments nor counter the trial court’s conclusions. We find no abuse of the trial court’s broad discretion in its ruling denying Mr. Goines reimbursement for the patio work and the duct installation, and accordingly such ruling is affirmed.
 

 |sMr. Goines also argues that he is entitled to reimbursement for interest on a loan he made in order to finance certain roof repairs he made to the community home. The trial court awarded him reimbursement for the roof repairs, finding that this was the type of maintenance and repair expenses contemplated by LSA-C.C. arts. 806 and 2369.3, but denied his claim for interest on the aforementioned loan, noting that Mr. Goines had not proven that a loan was necessary nor had he cited any case law that suggested such an expense was reimbursable. Mr. Goines advances no new argument here, except to suggest that he should not be penalized for taking a loan to make such a repair. We find no abuse of the trial court’s broad discretion in this area, and decline to disturb this ruling.
 

 No. 3. The trial court erred in its designation of pension benefits and retirement funds, as per
 
 Sims,
 

 [7]
 

 considering the stipulations of the attorneys.
 

 Mr. Goines next argues that the trial court erred in ordering the parties to calculate the division of the parties’ pension benefits and retirement funds as per the
 
 Sims
 
 formula, considering the stipulations of the attorneys. We note that in its
 
 *201
 
 order of June 2, 2009, the trial court ordered the parties to calculate the retirement accounts pursuant to the
 
 Sims
 
 formula.
 
 [8]
 
 No such calculation, however, was made in the judgment, as amended, on appeal in this proceeding.
 
 [9]
 
 The record in this proceeding does not give this court enough information to determine whether the trial court’s order for the parties to use the
 
 Sims
 
 formula is incorrect. Additionally, we find that the attorneys’ statements in the record cited by Mr. Goines do not constitute stipulations with respect to this issue. Accordingly, we decline to disturb the trial court’s ruling on this issue.
 

 |c)No- 4. The trial court erred in denying Mr. Goines reimbursement for sums he expended for the care and maintenance of the community property.
 

 In the trial court, Mr. Goines argued that he was entitled to be reimbursed a total of $1,256.25 for expenses he incurred, including household cleaning supplies, garbage bags, lawnmower repairs, and similar expenses, after the community ended, as care and maintenance of the formerly community home. The trial court denied this claim, finding that these expenses were occasioned by Mr. Goines’ personal use of the property by living there, and were accordingly not reimbursable under LSA-C.C. art. 2369.8, relying on
 
 Jones v. Jones,
 
 605 So.2d 689 (La.App. 2 Cir.1992) and
 
 Jurgelsky v. Pinac,
 
 614 So.2d 1381 (La.App. 3 Cir.1993). Mr. Goines argues on appeal that the trial court erred in relying on these cases because they were decided prior to the enactment of Article 2369.3. Mr. Goines further argues that had he not incurred these expenses, he would have been subject to a claim by Mrs. Goines for breach of fiduciary duty to “preserve and manage” the community property.
 

 Mr. Goines is correct that the enactment of Article 2369.3 changed the law. It imposed on a spouse who has control of former community property an affirmative duty “to preserve and to manage” such property. This article imposes a higher standard of care than that provided by LSA-C.C. art. 799 for ordinary co-owners. This article also imposes a higher standard of care in managing and maintaining such former community property than the standard imposed during the marriage for managing community property. See LSA-C.C. art. 2354 (rev.1979). However, even that being the case, we see nothing in the article itself or the jurisprudence to suggest that this article now contemplates reimbursement for items occasioned by the use of the dwelling, as is claimed here, nor has Mr. Goines directed this court to any such authority for his position. Accordingly, we find no | inabuse of the trial court’s broad discretion in denying this claim, and we thus affirm the trial court’s ruling thereon.
 

 No. 5. The trial court erred in denying Mr. Goines reimbursement for payments made on a computer loan.
 

 Mr. Goines argues on appeal that “it is clear” that this debt (computer loan) was owed at the termination of the community, that the property (the computer) was community property, and that he paid
 
 *202
 
 the debt. The trial court found that the loan in question was for repairs made to the community computer after the termination of the community. The trial court disallowed this reimbursement, finding that Mr. Goines failed to prove that the repairs were necessary, failed to show that the repair costs were reasonable given that a new computer would cost less than the repairs, and further that Mr. Goines had exclusive use of the computer after the community’s termination.
 

 The record shows that the parties stipulated that Mr. Goines paid “$1505.52. Debt paid on a computer that was a community piece of property, and he paid off the computer.” Further, the computer loan is listed on several of Mr. Goines’ descriptive lists. It is not described therein as a loan for repairs. At the August 2008 hearing, Mr. Goines testified about the computer loan. He did not testify that it was for repairs.
 

 Accordingly, and especially given the parties’ stipulation, it appears the trial court concluded in error that the loan for $1505.52 was for computer repairs. Rather, it was for the community computer itself. The parties stipulated to the amount and that the loan originated during the community. There is no stipulation or evidence, however, regarding how much of the loan Mr. Goines paid after the community terminated. It is clear, however, that Mr. Goines had exclusive use of the computer, notwithstanding his argument that he was not
 
 awarded
 
 exclusive use |nof it. Accordingly, because Mr. Goines failed to present any evidence regarding how much of the loan was paid after the community terminated, and also because he had exclusive use of the computer, we find no abuse of the trial court’s discretion in disallowing reimbursement for payments on the computer loan to Mr. Goines.
 

 No. 6. The trial court erred in its valuation of the community residence at 2322 Country Club Drive, LaPlace, Louisiana.
 

 In his next assignment of error, Mr. Goines argues that the trial court erred in maintaining its previous valuation of the community residence located at 2322 Country Club Drive, LaPlace, Louisiana, at $212,000 based upon a 2005 appraisal report.
 
 [10]
 
 Mr. Goines contends that the court rather should have adopted the $193,300 valuation of the residence given by his witness, real estate agent Ann Harvey, at the August 2008 hearing, given the “economy in general” and the downturn of the housing market in southeastern Louisiana.
 

 Ms. Harvey was qualified as an expert in “real estate evaluation.” She testified that she was not an appraiser, but was a real estate agent with experience in selling homes in this geographic area. She used a computer program to determine her valuation, one that calculated a value using only the actual selling prices of homes in the immediate area divided by the square footage of those homes. She presented no specific evidence regarding the real estate market in LaPlace at the relevant point in time. Nor did her evaluation appear to consider and compare the individual features of this home and the “sold” homes, but rather was a mechanical application of a computer program.
 

 | i2The trial court declined to disturb its earlier valuation of the community residence at $212,000, noting its broad discretion in this area. We find no abuse of the
 
 *203
 
 trial court’s discretion on this issue. In
 
 Katner v. Katner,
 
 09-0974 (La.App. 4 Cir. 12/23/09), 28 So.3d 566, the trial court rejected a valuation of a home prepared by a realtor in favor of an appraisal prepared by a licensed real estate appraiser. Accordingly, we affirm the trial court’s valuation of the community home at $212,000.
 

 No. 7. The trial court erred in denying Mr. Goines reimbursement for a computer repair expenses.
 

 The only reference to computer repairs we find in the record is a carbon for a check Mr. Goines wrote for $32.61 for repairs to the computer hard drive. As noted above, however, because Mr. Goines had exclusive use of the computer, we find no abuse of the trial court’s discretion in disallowing reimbursement of computer repair costs to Mr. Goines.
 

 No. 8. The trial court erred in denying Mr. Goines reimbursement for extermination costs for the community residence.
 

 Mr. Goines argues next that the trial court erred in denying him reimbursement for extermination costs for the community residence after termination of the community.
 

 In its reasons for judgment, the trial court found that Mr. Goines was “entitled to be reimbursed for ½ the cost of exterminator services, or $461.50.” The trial court’s judgment, however, does not specifically grant reimbursement to Mr. Goines for extermination costs he incurred for the community residence after termination of the community.
 
 [11]
 

 | i.oAt trial, Mr. Goines presented invoices in the amount of $923.00, representing what he paid for the termite contract and extermination services on the community home after the community terminated. He argues that these expenses were necessary for the preservation of the community home and hence are reimbursable. Mrs. Goines argues in brief that this reimbursement was properly denied under
 
 Jurgelsky v. Pinac, supra,
 
 presumably as expenses arising out of the Mr. Goines’ use of the home post community.
 

 We find, as the trial court correctly reasoned but did not specifically rule (possibly inadvertently), that the termite extermination expenses were necessary to preserve the community home and its value, as much as the roof repairs were. Accordingly, Mr. Goines is entitled to reimbursement for one-half of these expenses, or $461.50.
 

 No. 9. The trial court erred in denying Mr. Goines’ request for reimbursement of his payment of Mrs. Goines’ separate debts of $2,738 for her trailer, $294 for insurance thereon, and $1,618.61 paid to River Parishes, considering admissions of Mrs. Goines.
 

 The trial court’s judgment denied Mr. Goines’ claims for reimbursement of his payment of Mrs. Goines’ separate debts of $2,738 for her trailer, $294 for insurance thereon, and $1,618.61 paid to River Parishes, finding that Mr. Goines did not establish at trial if or when the trailer was purchased and for what purpose. However, we find that Mrs. Goines, in her testimony on October 8, 2008, stated
 
 *204
 
 that she brought the trailer prior to the marriage, and that the trailer debt of $2,738 was taken directly out of her paycheck during the marriage, thus paying off the trailer. She also testified that $294 in insurance on the trailer was paid during the marriage until the debt was retired. We find that this evidence establishes that Mrs. Goines’ separate debts (the trailer loan and the trailer insurance) were paid 114during the community with community funds, and therefore Mr. Goines is entitled to reimbursement for one-half of these amounts. Accordingly, the trial court’s judgment in this regard is reversed.
 

 Furthermore, Mr. Goines argues in brief that Mrs. Goines admitted, in her answers to his requests for admissions, that her separate debt to River Parishes of $1,618.61 was paid with community funds. The judgment fails to address this claim, and thus it was tacitly denied.
 
 [12]
 
 Our review of the record shows that, contrary to Mr. Goines’ assertion in his appellate brief, Mrs. Goines admitted that a debt to River Parishes in this amount was in fact paid during the community, but she specifically denied that it was her separate debt. Accordingly, we have no reason to disturb the trial court’s denial of this claim.
 

 No. 10. The trial court erred in failing to allocate the community home located at 2232 Country Club Drive, La-Place, Louisiana, to Mr. Goines.
 

 In his tenth assignment of error, Mr. Goines argues that the trial court erred when it failed to allocate the community home to Mr. Goines. The judgment on appeal, as amended, fails, in fact, to allocate the community home to either party. LSA-R.S. 9:2801(A)(4)(c) states that the trial court “shall allocate or assign to the respective spouses all of the community assets and liabilities.” Previously in this litigation, as noted above, the trial court declared the community home to be the separate property of Mr. Goines. This court reversed, finding that the home was community property. Because neither party appealed this judgment further, it is now final. This court’s judgment did not, however, allocate the home to either party, nor did the trial court allocate the home in the judgment now on appeal.
 

 The trial court erred, therefore, in rendering a judgment partitioning the community without specifically allocating the community home to one of the | ^parties, or, in the alternative, disposing of the community home as per paragraphs (e) or (f) of LSA-R.S. 9:2801(A)(4),
 
 supra.
 
 Because the home is the most significant of the parties’ assets, as noted by the trial court in the April 19, 2009 judgment, the partition is incomplete, and the matter must be remanded for disposition of the community home as per LSA-R.S. 9:2801(A)(4).
 

 This court further finds that the trial court did not follow the procedures mandated by LSA-R.S. 9:2801(A)(4) because its judgment did not assign value to all of the assets or liabilities, divide the assets and liabilities, and determine if an equalizing payment was required due to an unequal distribution. Accordingly, it is necessary to remand the case for completion of the partition proceedings, as this court has insufficient evidence before it to do so. See
 
 Goutierrez v. Goutierrez,
 
 09-1360 (La.App. 3 Cir. 4/7/10), 34 So.3d 1058.
 

 No. 11. The trial court erred in designation of debt other than the home mortgage and auto loans.
 

 In his last assignment of error, Mr. Goines argues that since Mrs. Goines listed only the auto loans and home mortgage as community debts on her list of assets filed in December of 2003, this is an admission that these were the only com
 
 *205
 
 munity debts, and thus characterization of any other debts as community in nature is “wrong.” But Mr. Goines fails to brief this item more specifically, or otherwise request specific relief from this court from the trial court’s judgment. He fails to identify herein what particular debts he believes the trial court mischaracterized.
 
 [13]
 
 As such, this assignment of error presents this court with nothing to review, and thus no relief is warranted.
 

 Mr. Goines also argues in brief that this court should declare that any obligation incurred by Mrs. Goines post termination of the community should be 11fideclared her separate and sole obligation, particularly the obligation to pay “$30,000.00” [sic] to River Parishes that she incurred in 2002 after the termination of the community. We find that the trial court properly addressed this issue in a previous judgment in this proceeding rendered on March 27, 2007. There, the trial court found that a $3,000.00 loan made by River Parishes to Mrs. Goines in April of 2002 was her separate obligation.
 

 MRS. GOINES’ASSIGNMENTS OF ERROR
 

 Mrs. Goines’ assignments of error pertain particularly to the community home.
 

 No. 1. The trial court erred in not requiring Mr. Goines to reimburse the community for the payment of the separate debt of $107,268.15 with community funds when the house was made community and that amount was borrowed with use of the community house as collateral to pay a separate debt of Mr. Goines.
 

 In her first assignment of error, Mrs. Goines argues that the district court erred in not requiring Mr. Goines to reimburse the community for the payment of the separate debt of $107,268.15 with community funds when that amount borrowed and used to pay a separate debt of Mr. Goines.
 

 Specifically, as noted above, Mr. Goines purchased the home on Country Club Drive on August 31, 1985 prior to the parties’ marriage. When they married on June 20, 1986, they lived in the home, which was still Mr. Goines’ separate property. The mortgage payments were made with community funds. On March 30, 1988, Mr. Goines transformed his separate home to community property, and the parties then refinanced the home, taking a new loan and mortgage in the stipulated amount of $107,628.15, and in the process paid off the previous loan and mortgage that Mr. Goines had taken when he purchased the house in 1985. The |17parties lived in the community home until they separated. The community terminated on August 7, 2000, approximately twelve years after the home became community property.
 

 Mrs. Goines argues that community funds (the new loan made in April of 1988) were used to pay the separate debt of Mr. Goines (Mr. Goines’ prior loan and mortgage), for which he now owes her reimbursement. She cites the following in support of her position: LSA-C.C. art. 2364,
 
 [14]
 

 Cook v. Cook,
 
 457 So.2d 235 (La.1984), and
 
 Sequeira v. Sequeira,
 
 04-433 (La.App. 5 Cir. 11/30/04), 888 So.2d 1097.
 

 We find that the cases cited by Mrs. Goines do not support her position, nor do
 
 *206
 
 they address the specific factual scenario before this court. Both of these cases concern the payment of a credit card account, not the donation of a separate home to the community and the subsequent refinancing of the mortgage on that home as a community obligation.
 

 We find that the refinancing of the home in April of 1988, immediately after it became community property, was equivalent to the community purchasing the home from Mr. Goines for the balance owed thereon. This is not a case of separate property being used for the acquisition of community property. It is similar to separate property of one spouse being acquired by the community through purchase. Mr. Goines’ separate obligation, the old mortgage, was paid off by the refinancing. The community now owned the home and was liable on the new mortgage. Because he was part of the community, Mr. Goines was liable on the new mortgage as well. Mrs. Goines, as part of the community, likewise received an undivided one-half ownership interest in and to the home, a very significant | isasset, and personal use and benefit of the home when it became community property, and lived in the home approximately twelve years (from 1988 until 2000), but was likewise was also liable on the mortgage as part of the community. The home, as noted by the trial court, was the parties’ most significant asset, and the payment of the new mortgage loan cannot be compared to one spouse paying off a separate credit card account with community funds as argued by Mrs. Goines in the cases she cites in her brief.
 

 Under the factual scenario presented here, we find no support for Mrs. Goines’ argument that she is entitled to reimbursement for one-half of the mortgage amount originated in 1988 when the community acquired the home from Mr. Goines and refinanced the home. We find no abuse of the trial court’s discretion in denying this claim.
 

 No. 2. The district court was in error in ruling that the payment of the mortgage on the community house, taxes paid, and flood and homeowners insurance after the divorce should be reimbursed to Mr. Goines.
 

 Mrs. Goines argues that the trial court erred in ordering her to reimburse Mr. Goines for one-half of the mortgage payments, tax payments, and insurance payments he made on the community home after the termination of the community, because he had exclusive use of the home after 2000 and paid her no rent. The trial court found that Mr. Goines is entitled to reimbursement of these expenses under LSA-C.C. 2369.3, reasoning that payment of the mortgage was within the scope of that article’s charge of prudent property management and that Mr. Goines’ actions in this regard protected the value of the parties’ most significant community asset. The court also reasoned that Mrs. Goines had availed herself of her status as a co-owner when she granted the mortgage on the house to River Parishes in 2002, even though she no longer lived there and was paying |19nothing towards the mortgage and expenses on the home for which she was legally responsible.
 

 We see no abuse of the trial court’s discretion in this ruling. Accordingly, this ruling is affirmed.
 

 Nos. 3 and 4. The district court was in error in awarding Mr. Goines all mortgage payments paid by him on his separate house with his separate funds prior to the marriage to Mrs. Goines, and in awarding Mr. Goines the $6,000 down payment on his separate house he purchased with his separate funds prior to the marriage.
 

 Mrs. Goines next argues that the trial court erred in awarding Mr. Goines
 
 *207
 
 “reimbursement for one-half of all the mortgage payments he made on the house, prior to 1988, from his separate property” and for one-half of the down payment he made on the house in 1985. She points out that no specific amount was awarded and no basis for the award was cited.
 

 We find that these awards to Mr. Goines are not supported by the law and were an abuse of the trial court’s discretion. The record shows that prior to the community’s termination in 2000, the only mortgage payments Mr. Goines made on the house from his separate property were made when the home was in fact his separate property, from when he purchased the home in 1985 until he married Mrs. Goines on June 20, 1986. Payments on the mortgage after the marriage were made with community funds, as the trial court correctly noted. There is no support in the law, specifically LSA-C.C. art. 2867
 
 [15]
 
 as cited by the trial court, for ordering Mrs. Goines to reimburse Mr. Goines for mortgage payments made on his separate property with his separate funds prior to the marriage, notwithstanding the fact that the home later became community property. Likewise, reimbursement to Mr, |2nGoines for the down payment made by him with his separate funds prior to the marriage to acquire separate property is similarly not supported in the law, notwithstanding the fact that he later chose to transform the home to community property. Furthermore and importantly, by transforming the house from separate property to community property without any reservations or conditions, Mr. Goines has in effect waived and released any such reimbursement claims he may have had and accordingly is estopped from now asserting them. For these reasons, these reimbursement awards to Mr. Goines are reversed.
 

 CONCLUSION
 

 The judgment on appeal is affirmed in part and reversed in part as noted above. The matter is remanded to the trial court for disposition of the community house and completion of the partition proceeding as per LSA-R.S. 9:2801. Each party is to bear their own costs of this appeal.
 

 AFFIRMED IN PART, REVERSED IN PART; REMANDED.
 

 [1]
 

 . LSA-C.C. art. 2369.3 provides, in pertinent part, as follows:
 

 A spouse has a duty to preserve and to manage prudently former community property under his control, including a former community enterprise, in a manner consistent with the mode of use of that property immediately prior to termination of the community regime. He is answerable for any damage caused by his fault, default, or neglect.
 

 [2]
 

 . LSA-C.C. art. 2369.4 provides as follows:
 

 A spouse may not alienate, encumber, or lease former community property or his undi
 
 *199
 
 vided community interest in that property without the concurrence of the other spouse, except as provided in the following Articles. In the absence of such concurrence, the alienation, encumbrance, or lease is a relative nullity.
 

 [3]
 

 . LSA-C.C.P. art. 856 provides as follows:
 

 In pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally.
 

 [4]
 

 . LSA-C.C. art. 2354 provides as follows:
 

 A spouse is liable for any loss or damage caused by fraud or bad faith in the management of the community property.
 

 [5]
 

 . Paragraph 4 of Mr. Goines’ Motion for Judicial Partition of Community Property alleged the following: The defendant, Dianne B. Goines, has damaged the community due to her mismanagement of community property.
 

 [6]
 

 . LSA-C.C. art. 806 provides as follows:
 

 A co-owner who on account of the thing held in indivisión has incurred necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to a third person, is entitled to
 
 *200
 
 reimbursement from the other co-owners in proportion to their shares.
 

 If the co-owner who incurred the expenses had the enjoyment of the thing held in indivision, his reimbursement shall be reduced in proportion to the value of the enjoyment.
 

 [7]
 

 .
 
 Sims v. Sims,
 
 358 So.2d 919 (La. 1978).
 

 [8]
 

 . The trial court’s order dated June 2, 2009 provides as follows: The parties are ordered to address the calculation and distribution of the retirement accounts pursuant to the
 
 Sims
 
 formula.
 

 [9]
 

 . In
 
 Sims, supra,
 
 the Supreme Court affirmed a divorced wife’s right to receive benefits from her husband's government pension plan in the proportion that they were attributable to the husband’s employment during the community. The husband was still employed but the divorced wife was entitled to have her interest recognized prior to the funds becoming payable to the employee.
 

 [10]
 

 . As noted above, in a previous judgment in this proceeding signed on May 31, 2007, the trial court ruled that the home was Mr. Goines’ separate property and also valued the home at $212,000. This court reversed, finding that the home was community property. This court did not, however, address the valuation part of the trial court’s judgment.
 

 [11]
 

 . It should be noted that the trial court’s judgment of April 21, 2009 denied Mr. Goines reimbursement for "roof repairs, patio repair, duct installation, and various household products.” Further, since the trial court’s judgment does not specifically grant reimbursement to Mr. Goines for extermination costs he incurred for the community residence after termination of the community, this claim was tacitly denied by the trial court in one of the last items in the judgment, wherein the trial court stated: IT IS FURTHER ORDERED, ADJUDGED AND DECREED that any other claims that were taken under advisement that were not specifically addressed herein are DENIED.
 

 [12]
 

 . See footnote 11.
 

 [13]
 

 . Further, as noted above, the trial court found in its March 27, 2007 judgment that there were more community debts than those listed in Mrs. Goines' 2003 descriptive list.
 

 [14]
 

 . LSA-C.C. 2364 provides as follows: If community property has been used during the existence of the community property regime or former community property has been used thereafter to satisfy a separate obligation of a spouse, the other spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used.
 

 [15]
 

 . LSA-C.C. 2367 provides in pertinent part as follows: If separate property of a spouse has been used during the existence of the community property regime for the acquisition, use, improvement, or benefit of community property, that spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. The liability of the spouse who owes reimbursement is limited to the value of his share of all community property after deduction of all community obligations.